Dayton, J.
This case w.as tried before me at the Hunter-don October Circuit of 1838, and a verdict rendered for the plaintiff. On the trial, both parties claimed title to the lands in controversy, under Aaron Winings. Stewart claimed as a judgment creditor who purchased at sheriff’s sale; and by the production of the judgment, execution and sheriff’s deed, he made out a clear prima fade title. Johnson, the defendant below, then produced in evidence, a deed from Winings and wife, to himself, of a date prior to Stewart’s judgment. Whereupon Stewart opened that he would show that the deed to Johnson, was without consideration, and made to defeat creditors. Numerous witnesses were then examined upon this point, and among others one Amos Smith was offered to prove the declarations made to him by Winings, a short time before the execution of the deed to Johnson. To these declarations, the defendant by his counsel objected, but the objection was overruled, and the evidence admitted. Whereupon the witness among other things testified, that Winings a short time before his break up, came to him and told him that he wanted to give him a deed for his property &c. which he refused to receive, saying he was afraid he was going *89 to cheat his creditors. Winings said he was not, he was going to pay all his debts, but he wanted time. The witness refused to have anything to do with it, and Winings said if he did not, he would put it in the hands of John Johnson, (the defendant,) before morning.
The plaintiff likewise called Mrs. Jane Winings, the wife of Aaron, to show that there was fraud in the conveyance from her and her husband to Johnson. The witness proffering herself ready and willing to be sworn; the court admitted the evidence, reserving the point for consideration at bar.
The application for a new trial, is upon the ground that the above evidence was incompetent and ought to have been overruled.
I. The evidence of Smith as to the declarations of Winings, was undoubtedly competent, if without them, there was evidence enough of a community of interests and design between him and Johnson, to go to the jury, which is not disputed. It certainly would not have been competent to make out a case of fraud between these parties, to show in the first instance the declarations of Winings, without bringing home those declarations, or the intent of Winings, to Johnson. But after a number of witnesses had been examined to make out a case of collusion between them, and there was so much evidence on this point as to make it proper that the court submit the question to the jury, it became matter of necessity that this evidence likewise be passed to them with instructions that they were to consider it as overruled, and disregard it altogether, unless they should be satisfied that Johnson became cognizant of, and privy to the fraudulent intent of Winings : and this was accordingly done in the charge of the court. Had the evidence been overruled, it must have been upon the express ground that there was no proof before the jury of a fraudulent collusion; but that point was the very point upon which the jury, not the court, was to decide ; and upon which already, many witnesses had been examined before them. To have rejected the evidence, would therefore have been to decide the whole question in the case.
That Johnson did not know of Winings’ fraudulent intent at the time that he, Winings, made these declarations, does not affect the question. If an individual connect himself with others *90 in a conspiracy to defraud, or for any other purpose, it would be no answer to say that the whole plan was concocted before he became an associate. By connecting himself with them, and aiding in the execution of their plan, he adopts their prior acts and declarations, so far at least as they constitute a part of res gestee, as his own; as much so, as if he had been present and assented to each successive step in carrying out and consummating the fraud. Apthorp et al. v. Comstock et al., 2 Paige 482; Bridge v. Eggleston, 14 Mass. R. 245; Crary v. Sprague, 12 Wend. 41.
II. But the main question in the case is that reserved for consideration at bar. Was Mrs. Winings, though a willing witness, competent to impeach her own and husband’s deed as fraudulent ?
On the ground of her personal interest, she was unquestionably competent; (the interest of her husband will form a distinct matter of consideration hereafter.) The verdict in that case, being between other parties, could not in any respect affect her. It could never be given in evidence upon any question touching her rights. It was said on the argument, that she was swearing in behalf of her own dower. But how? the verdict could not affect that question directly or indirectly. The object of her evidence, was to show that the deed to Johnson was without consideration and therefore void as against creditors, not as against the grantors: as to them, it was perfectly valid in any event, and her dower was unquestionably gone. Rev. L. 148; Osborn v. Moss, 7 John. R. 161; Jackson, ex dem. Malin v. Garnsey, 16 John. R. 189; Jackson v. King, 4 Cow. 207, 216; 11 Wheat. R. 213.
Nor is there any difficulty upon the other branch of the exception, to wit: that she cannot impugn her own deed. This objection now goes to the credibility of the witness merely, and not to the competency of the evidence. Jackson, ex dem. Mapes v. Frost et al., 6 John. R. 136; Jourdaine v. Lashbrooke, 7 T. R. 601; 2 Ld. Ray. 1008; McFerran et al. v. Powers et al., 1 Serg. & R. 102; Baring, Assignee v. Shippen, 2 Bin. 154; Jackson v. Meyers, 11 Wend. 537.
But the objection against the competency of the'wife, upon the ground of public policy, (which forbids her testifying against the interest of her husband,) is of more weight. Tie was in pos *91 session of one lot out of four, of the premises in controversy, as the tenant of Johnson, the defendant. If the verdict were against Johnson, her husband was liable to be immediately turned out of possession, by virtue of the Hab. fac. poss. which would issue upon the judgment entered against the casual ejector. The husband had therefore a direct interest in the issue of the case, so far as his possession of the one lot was concerned. He could not have been a witness for his landlord in reference thereto. Adams on Ej. 250; Cowp. 621; 8 Cowen, 290. Such being the case, the wife though a willing witness, was not competent to testify against the interest of her husband, directly involved in the event of the suit. It might occasion family dissentions, and embitter domestic relations, if such evidence were admitted in courts of justice. On the ground of public policy, therefore, neither husband nor wife can be heard adverse to the direct interest of each other.
But it appears that in this case, the husband was in possession of only one lot of the lands in controversy; that three other persons were in possession of the other three lots. That separate suits were brought against each for that part in his individual possession; but upon the return of the several declarations in ejectment, Johnson appeared as the landlord in each case, and upon affidavit that there was the same defence and evidence in all, he succeeded in obtaining a rule to consolidate; the plaintiffs objecting against the rule. The wife of Winings would beyond all controversy, have been a competent witness for the plaintiff as against the other three defendants, and in reference to those lots in their possession. The counsel of the plaintiff now offer to remit or amend the verdict, by the judge’s notes, as to the one lot in possession of the husband, and enter judgment for the balance only in possession of the other defendants; in reference to which, the evidence of the wife was entirely competent.
I can see no sufficient reason why this should not be done. Our power to do it is unquestioned. The objection urged by my brethren, is that it may become a bad precedent hereafter. But how ? It is admitted upon all hands that this witness was competent as against all the tenants but her husband. There is no dispute about this. Suppose then in an action of assumpsit for four notes of hand of one hundred dollars each, it should appear on *92 a motion for a new trial, that a witness was competent in reference to three of them, but not as to the fourth, which therefore remained unproved by legal evidence ; would this court in the exercise of a sound discretion, listen for a moment to the application for a new trial upon this technical ground, that if he were incompetent for one point, he must be for all, and when the plaintiff tendered himself ready and willing to remit the amount of that unproved note ? Surely not. It would be a sacrifice of justice upon the altar of technicality. Separate judgments are entered in this case, against the several casual ejectors, and upon which, separate writs of execution would issue against the several tenants; the case is therefore stronger than that just supposed. I am unwilling at this day to substitute technicality in place of right, when not bound by positive rule: and it would be against every principle of right to permit a defendant to take advantage of a rule of court granted for his convenience and to save him expense ; and upon the belief that it would not interfere with the rights of the plaintiff; a belief predicated upon the defendant’s own affidavit. So too it would be against a well settled rule of practice, which requires that courts see that their own action does harm to no man : see Den v. Tomlin, decided at the present term. But it is said that the consolidation rule, would not have been granted had the defendant shown to the court at the time of the application, that this witness would have been called. This may be so, but was he bound to know when he commenced his suit, of every witness he would be able to call upon the trial ? Surely not; nor is it probable that the plaintiff knew at an early day, of this witness. He could not guess that she would come forth and willingly impeach her own act and that of her husband, as fraudulent. He may not have known of this witness, till the trial was actually in progress. His suits were commenced in such form as would have entitled him to her evidence, had he not been interfered with against his consent, by the court, and there is and ought to be no difficulty now, (more especially in an action of ejectment which is framed and moulded by courts at the present day, to the purposes of justice) to do the plaintiff right about this matter. But the plaintiff is not entitled upon principle only, to have this verdict amended according to the right of the case, but he is well entitlec] by authority. In Bear v. Snyder, *93 11 Wend. 592, it is held, “where there is a verdict for the whole of the premises claimed, and the plaintiffis entitled to only a part thereof, the verdict will not be set aside; but will be amended according to the right of the case.” Eow this is the very case under consideration ; the verdict is for the whole of the premises in controversy, but it is erroneous in reference to that part in possession of the husband of the witness, because founded upon illegal evidence. The supposed technical illegality of her evidence as against the other defendants, growing out of the consolidation rule, is surely unimportant when addressed to our discretion for a new trial. If so, the plaintiff being willing, it ought not to be set aside, but amended according to the right of the case. In Seward v. Jackson, ex dem. Vanwick, 8 Cow. 406, it was doubted by Spencer, Senator, whether such amendment might not be made after judgment, and when the case was up upon writ of error, if there were several demises and counts in the declaration. But that is not the present question. I can see no possible reason why the plaintiff should not amend his verdict according to the right of the case, and take judgment accordingly. It will be remembered that this is not like those cases where a wife is incompetent to testify for or against persons who are co-defendants or conspirators with her husband, and where the effect of her evidence would be to convict or discharge her husband. As in 1 Moody C. C. 281, 289; Roseoe’s Ev. 114; she is rejected in such cases, from a supposed leaning in favor of her husband; but her position in this case, was' otherwise. She came forward willingly to testify against and not in favor of such defendants. The principle does not therefore apply.
But an important point still remains. Can a wife testify to such matters as charge a fraud upon her husband, or is she excluded only in those cases where her evidence criminates him ?
The cases without a single exception, so far as I can find, exclude her evidence only where it criminates or tends to criminate her husband, excepting of course where she is excluded upon the ground of interest or that the communication was confidential. In The King v. The inhabitants of Cliviger, 2 T. R. 263, it was alleged that the husband had a former wife living, but the husband being called, denied it on oath, whereupon the first wife was called to prove the fact, but she was rejected; and Ashurst, J. *94 said, “the ground of her incompetency arises from a principle of public policy which does not permit husband and wife to give evidence that may even tend to criminate each other.” Grose, J. said, “ it is established that a wife shall not be called to give testimony in any degree to criminate her husband; and that Lord Holt had said, “ she shall not be called even indirectly to criminate him.” This case is frequently referred to, and in some of the old treatises on evidence, I find the rule adopted as is here laid down. But many difficulties grew out of it, when it was so broad and unlimited in its terms; accordingly it was subsequently altered materially in the case of Rex v. All Saints, Worcester, 4 Petersd. Ab. 157; S. C. 1 Phillips’ Ev. 74, 3d Ed.; wherein it was held that the wife’s evidence in a collateral case was admissible, although it tended to show thaf her husband was guilty of bigamy; the court, said “ the evidence was admissible, since it did not directly criminate the husband, and could not afterwards be used against him or made the ground work of any future prosecution.” In Roscoe’s Ev. 114, it is said that the court of King’s Bench in the case last cited, after much argument, held that the rule laid down in Rex. v. Cliviger, before referred to, was too large, and in Boscoe, the true rule is given as above modified and restricted. So in 2 Starh. Ev. 710, it is said, that the position laid down in the case last cited, “certainly seems to be too extensive and too indefinite, and had been materially contradicted in the case of the King v. The Inhabitants of All Saints &c. see also Phillips’ Ev. 74, 3d Ed. and Grisley’s Eq. Ev. 245. I think therefore that we may assume the modern doctrine to be, that the evidence of the wife must directly criminate the husband to make it objectionable; a mere tendency to criminate, as held in some early cases, is not enough to justify its rejection on the ground of public policy.
But this question is something aside the point now before us, which is not whether the evidence must directly criminate or merely tend to criminate, but whether it may not be incompetent though it do not criminate at all. It is said that • the reason of the rule ought to exclude all evidence which .charges upon the husband an act of moral turpitude, inasmuch as family dissention may be created as well by such charges as by those of a criminal character. And so they may, though *95 being of a lower grade of offence, they are perhaps less likely to disturb the peace of families, than a charge of crime. But there is no ease which sustains the position contended for; the language of the books is uniform ; the evidence to be incompetent, must criminate; and the connection in which the word is always found, shows that it is used as tantamount to charging a crime. I am unwilling without authority, to extend the rule further. The absence of a decision directly, upon the question, where the case is of such constant occurrence, is of itself plenary evidence against the admission of the rule. If we once depart from the safe and well defined language of the books, that the evidence must criminate, where are we to stop ? The object of the wife in this very case, was to show that the conveyance by herself and husband, was without consideration and therefore fraudulent as against creditors; and one of the witnesses swears that he, Winings, told him, he was not going to cheat his creditors, he was going to pay all his debts, but he wanted time merely. Suppose this were so, and that he honestly intended only to prevent a sacrifice of his property in these hard times, or to keep a rapacious creditor from seizing upon it at a nominal price, to the destruction of himself, and loss to his other creditors, would the conveyance for such purpose only, be infected with moral turpitude, or merely with legal fraud ? It might puzzle a casuist to settle the point. Again, suppose a husband, among other creditors be indebted to a child, on whose affection and generosity he can confidently rely for a future support, and thereupon conveys to him every dollar of his estate without paying a cent to his other creditors; in this, there is no legal fraud, but is, or is it not, an act of moral turpitude ? Hundreds of questions of a like character must be settled before we lay down tlie loose rule that a wife shall not be permitted to speak to an act charging moral fraud or turpitude upon her husband. What crimes involve moral turpitude, we can settle with some degree of accuracy; but what charges not amounting to crimes, involve moral fraud or turpitude, is exceedingly difficult of solution, Upon such questions, the light of revelation wherever it reaches, is an unerring guide; but aside from this, the common law is found differing from the civil law: casuists differ from each other; scarcely two can be found treading, in each other’s foot-steps *96 throughout; the whole field of ethical inquiry is everywhere marked by transverse paths. It is perhaps for this reason among others, that courts have adhered to the well defined rule, that the evidence must criminate, to make it exceptionable on the ground of policy.
The evidence of Mrs. Winings, showing that the deed from herself and husband was without consideration, did not criminate her husband, and was therefore in that respect unexceptionable.
But it was asked on the argument, whether it was to be tolerated, that a wife be permitted to detail the confidential communications of her husband, even though they do not striotly criminate him. Certainly not; the privacy of married life is sacred. The law hangs a curtain before it, which no rude hand is permitted .to draw aside. In the first place, the unity of their interests and the policy of the law, shuts' out almost everything; but in addition to this, it is a rule that all communications between husband and wife are privileged; as much so, as communications between counsel and client, 2 Stark. Ev. 709; Roscoe Ev. 113, and so in Stein v. Bowman et al. 13 Peters, 209, it is said, “ that a wife cannot state what she has learned from her husband in confidential intercourse.” So strictly is this rule adhered to, that not even the death of one of them, or their divorce, can release the other. In Monroe v. Twisleton, reported in the Appendix to Pealce’s Evidence, Lord Alvanley said, it could never be endured that the confidence which the law had created whilst the parties remained in the most intimate of all relations, should be broken, whenever by the misconduct of one party, the relation has been dissolved. In the present case, the wife testified, not to confidential communications obtained from her husband, but to facts which she learned as well from Johnson, as from the business transaction in which she herself participated.
My opinion therefore is, that the plaintiff have judgment for the three lots in possession of the other three tenants, and that the rule to show cause be discharged, but without costs.
Hornblower, O. J.
Four several ejectments were brought by the lessor of the plaintiff, against four several tenants of the premises in question. On motion in behalf of Johnston the *97 above named defendant, the actions were consolidated, and he was admitted to defend, as landlord of the original defendants. On the trial of the cause, it turned out, that both parties claimed title under Aaron Minings, one of the tenants ; and the question entirely depended on the bonafdes of a deed from Minings and his wife, to Johnson the defendant. To impeach this deed, and to prove that it had been made without consideration, the plaintiff called Mrs. Minings, the wife of the said Aaron Minings. She was objected to by the defendant’s counsel; but the judge admitted her evidence, reserving the question of her competency, for consideration at bar, in case a verdict should be found for the plaintiff. The jury having rendered a verdict for the plaintiff, we are now called upon to decide whether Mrs. Minings was a legal and competent witness in the cause.
The counsel for the defendant objects : First, that Mrs. Minings was incompetent, on the ground of her personal interest: the effect of her testimony being to defeat a deed which, while it remained in force, would bar her of dower.
Secondly, because she was not an admissible witness to invalidate a deed to which she herself was a party.
Thirdly, on the score of public policy, which prohibits a wife from being a witness for or against her husband: the object of her testimony being, in the first place, to impeach the moral integrity of her husband ; and secondly, to turn him out of possession of that portion of the premises which he occupied.
First: It is said that Mrs. Minings had a personal interest in defeating the deed ; inasmuch as it barred her dower, she having executed and acknowledged it. But this is a mistake. If she proved the deed fraudulent as to creditors, she did not thereby restore her husband’s title to the land, nor her own right to dower. As against her husband and herself, the deed would remain, both at law and in equity, a perpetual bar. The second objection isequally groundless. The idea that a party to a deed, cannot be admitted as a witness to impeach it, has been long since exploded, in Mestminster Hall, and was, in effect overruled by this court, in Freeman a. Brittin, 2 Harr. R. 191. Thirdly: The objection on the score of public policy, has presented to my mind a more serio.us difficulty. The testimony of Mrs. Minings vent directly to impeach the moral character of her husband; *98 and more than that, to expose him to an action for a penalty, under the fourth section of the statute of frauds. It is admitted, and is abundantly clear from the books, that the rule which precludes a woman from testifying against her husband, is not confined to cases in which he is a party to the record, or concluded by the verdict. On the contrary, it is expressly decided, that she cannot be admitted to criminate her husband, although he is no party to the suit, and cannot be directly affected by her evidence. And in all the cases in which the wife has been examined touching matters indirectly affecting the pecuniary interest of the husband, the reason assigned is, that he is not bound by the verdict, nor necessarily affected by it.
The reasons for the rule, on which the objection in this case is founded, are not the same as those which prohibit man and wife from being witnesses for or against each other, either in civil or criminal matters, where one of them is a party on the record, or concluded by the verdict. The objection in such cases, is founded on the legal unity of man and wife; Wyndham v. Chetwynde, 1 Burr. 424; “ quia sunt duseanimse in carne una;” Co. Litt. 6 b. They cannot be witnesses for each other; for then they would be witnesses for themselves; and they cannot be witnesses against each other, for then they would be compelled to testify against themselves. Whereas the rule now under consideration, has reference to cases in which the husband is not a party to the record, nor immediately or necessarily affected by the verdict: and hence, the controversy in. the books has been, not whether man and wife could be witnesses for or against each other in a suit in which either of them was a party: but how far they might be called to testify, in suits between other parties, to matters indirectly affecting each other’s interests or characters. The spirit and design of the rule was, to preserve the harmony of domestic life. It seems to have its foundation upon other principles than those which enter into the discussions relating to the competency or incompetency of witnesses, upon the ground' of interest. It is founded on the sacred and delicate relation that subsists bet veen man and wife, and is dictated by a wise regard to the importance of preserving the peace of families : and it seems to me, ‘hat the reason and spirit of the rule, if carried out, would not only exclude a wife from giving testimony to criminate her hus *99 band $ but from testifying to any matter affecting his interest or his integrity. But the cases are the other way; and many of them go so far as to establish the principle, that in a suit between other parties, the wife may be called to prove any immoral or dishonest act of her husband, not amounting to au indictable of-fence If however it is a good reason for admitting a woman to testify against the pecuniary interests, or the moral integrity of her husband, that the verdict cannot conclude, or be given in evidence against him, I am at a loss to know, why it is not equally a good reason for permitting her to prove any act, for which her husband may be indicteds for surely, the verdict would no more, conclude, or be evidence against him in one case, than in the other. Nor can I see any good sense in the distinction that is made between immoralities that are indictable and such as are not. It is true, the cases say, that the wife shall not be permitted to criminate her husband : and it is said, that to criminate, is to charge with the commission of some indictable and punishable offence. In a strictly legal and technical sense, it may be so ; but in common sense and sound morality, it means much more. Is it no crime to lie, to cheat, to get drunk, because »no indictment lies for such immoralities? Whatever is malum in se, is criminal, in the sight of God and man : yet, much that is malum in se, is not indictable or punishable. Nay, many things, not indictable or punishable at law, are more criminal in a moral point of view, and more disgraceful to the perpetrator of them, than some that are indictable. If a man has been called as a witness by one party, shall his wife be called by the other, to impeach his credibility, by proving him to be notoriously infamous, and unworthy of credit, because he cannot be indicted for such infamy ? In short, if the object of the rule is to preserve conjugal harmony, and prevent those bickerings and feuds that might result ftom a public exposure of each other’s faults, I do not see, why the rule does not impose silence on the wife as well in relation to matters that exhibit her husband in an odious or ridiculous point of view, as to those which, if true, would subject him to indictment. Nay, the spirit and design of the rule, it seems to me, would equally exclude her from testifying to matters indirectly affecting her husband’s pecuniary interest, or his title to property. Indeed, with some men, a disclosure by *100 the wife, of such matters, would more effectually embitter his feelings against her, than if she testified to a matter affecting only his moral character. Nevertheless the course of decisions is otherwise; and the rule now seems to be nothing more than this : that a wife, in a suit between others, shall not be permitted to testify to any matter, for which, if true, her husband may be indicted. The objection therefore on this ground must be overruled. There is however, another point of view, in which the testimony of Mrs. Winings, was inadmissible. Her husband was not, by name, a party in the cause which was tried at the Circuit; yet he was substantially so, and bound by any verdict that might be rendered therein. The effect of her testimony, then, was to conclude her husband’s rights. If a verdict and judgment passed against the defendant on the record, her husband was to be turned out of possession ; not only so, but that verdict and judgment, were to be evidence against him in an action for mesne profits. She was excluded therefore by that fundamental rule of law, which prohibits man and wife from being witnesses for or against each other in any cause, in which either of them is.a party, or directly interested in the event of the suit. There is no doubt, if the actions had been tried separately, Mrs. Winings would have been a competent witness against the three other tenants. Hence it has been argued, that as the carnes were consolidated on the motion of the defendant, the plaintiff ought not to be prejudiced by such consolidation. No doubt, if the materiality of the evidence of Mrs. Winings as against the other tenants, had been disclosed to the court, the rule would have been refused. But that was not done; the rule was granted, and the cause went down to be tried on a single issue. Mrs. Winings was an incompetent witness on the trial of that issue, because it directly involved the rights of her husband; and the verdict must therefore be set aside. Two modes of proceeding have been suggested : one is, to permit judgment to be entered for the plaintiff, on the postea, but suffer him to take out a writ of possession only for so much of the premises as are in possession of the three other tenants; and then give the plaintiff a new trial, for the part that is in possession of Winings.
The other is, to set aside the verdict, so far as relates to the premises in possession of Winings, and permit the plaintiff to *101 take judgment for the rest. The two modes come essentially to the same thing; and we cannot, in my opinion adopt either of the expedients, without setting a precedent, that we have no right to do, and which may embarrass us hereafter. If the plaintiff’s title to one part of the premises in question, depended on one deed; and of another part, on another deed; and Mrs. Winings had been improperly admitted to testify in relation to one of the deeds only; but was competent to give evidence as to the other, or had not been examined touching such other; it would present a different case, and probably under such circumstances, a verdict might be corrected by the judge’s notes. But this is not such a ease. Mrs. Winings was not a competent witness, to prove any thing, in that muse: because the rights of her husband would be concluded by any verdict that could be rendered therein. The whole question turned upon the validity of one deed ; and if her testimony proved that to be a void deed, the plaintiff was entitled to a verdict for the whole premises. Had it occurred to the judge at the trial, that she was an incompetent witness in that cause, for the reason just assigned, would he have ad mis ted her at all? Could he have done so? I think not; and we have no right to modify and give effect in any way to a verdict rendered upon the testimony of an incompetent witness. In my opinion therefore, the verdict must be set aside, but without costs; and the rule for consolidation be so modified, as to include only the actions against the three other tenants. The costs of the trial which has been had, must abide the event of the suit for the premises in the possession of Winings; and in that suit, let Johnston be admitted to defend as landlord, upon the usual terms.
White, J. concurred.
Neyius, J.
The premises in question are two small tenements, a shop and one or two acres of land, in Hunterdon county, occupied at the commencement of the suit, by four tenants, against whom, separate actions were brought at September term, 1837. These suits were consolidated into one, and the defendant who was the landlord, admitted to defend alone.
It was tried at the Hunterdon Circuit, in October, 1839. On the trial, the plaintiff having shown a documentary title in one *102 Aaron Winings, offered and gave in evidence, a judgment against him in favor of the lessor, an execution, levy and sale by the sheriff, and a deed by the sheriff under said judgment and execution, to the lessor, for the consideration of one hundred and twenty-five dollars, dated August 5, 1835, and acknowledged and recorded the same day. He further proved, that at the commencement of the suit, Winings occupied part of the premises, and that at the trial he still occupied the house, though not for his family.
The defendant then gave in evidence, a deed for the premises from Winings and wife to himself, dated January 27, 1834, acknowledged on the 11th and recorded on the 12th of February, of the same year, for the consideration of seven hundred dollars.
The plaintiff then called several witnesses to prove, that the deed from Winings and wife, was without consideration, fraudulent and void, and under the permission of the court, notwithstanding objections made by the defendant, gave in evidence certain declarations of Winings made a short time before the execution of the deed to the defendant, showing an intention on his part to convey his property to delay or defeat his creditors; and called Mrs. Jane Winings, the wife of Aaron Winings, to prove fraud in the conveyance to the defendant. The defendant objected to the witness, on the ground of her incotnpetency to give evidence in the case, but the objection was overruled, and her evidence admitted by the court.
The jury rendered a verdict for the plaintiff.
In support of the motion for a new trial, the defendant relies mainly on the objection, that the declarations of Winings were received in evidence, and that Mrs. Winings was permitted to testify upon the trial. As to the first of these objections, I cannot perceive that the court erred, for there was some evidence connecting the defendant with Winings, in the intent to delay or defraud his creditors; and the court left it fairly to the jury to determine from the evidence whether the defendant had knowledge of such fraudulent intent of Winings, as was proved by his own admissions.
But a more serious and important question, and indeed the only one involved in the case, is presented. The legal admissibility of Mrs. Winings as a witness. She was the wife of the *103 grantor in the deed to the defendant, and was called to impeach that deed, and destroy its effect, by proving that it was fraudulently made. Iler husband too, was in the actual possession of part of the premises, and the effect of her testimony was to turn him out and make him liable in. an action for mesne profits.
The objections urged against the admissibility of her evidence, are
First, That she could not give evidence which would, in any degree, tend to criminate her husband.
Second, That she could not lawfully impeach by her evidence, a deed which she herself had executed and delivered.
Third, That she was incompetent to testify against her husband’s interest.
And lastly, That she was interested in the event of the suit.
As to the first objection, it is certainly true, that elementary writers have laid down the principle, that husband or wife cannot lawfully, by their evidence, criminate each other. This rule however, is subject to this qualification, that to exclude the evidence, it must be such as tends directly to charge the other with crime or such an act of moral turpitude as will subject him or her to a public prosecution. If it only indirectly or incidentally may lead to such consequences, it is no ground for excluding it. And this rule too, is subject to divers exceptions, arising from higher considerations than the reason upon which the rule is founded. As in ease of personal violence to the wife, and the like, where public justice and the safety of society, call for the exception. In this case, the witness was offered to prove fraud in the conveyance by the husband to the defendant, by showing that it was without consideration, and intended to delay or defeat creditors. Such evidence showed a want of moral honesty in the husband, but neither directly nor indirectly charged him with an act of moral turpitude which would subject him to a criminal prosecution by indictment. The rule as laid down in the case of Rex v. Cliviger, 2d T. R. 263, appears by subsequent authorities to have been laid down too generally and extensively. Phil. Ev. 68. I think therefore, that the exception to the witness, on this ground, was not well taken.
The second exception taken to the competency of the witness is not sustained by law. Whatever may at one time have been *104 the authority of the case of Walton v. Shelly, decided by Lord Mansfield, and the reason and policy upon which it was founded, that case which excluded the witness, has since been overruled in England, and its authority wholly denied by this court in the case of Freeman a. Brittin. A witness may therefore, impeach his own deed, by proving it fraudulent, without consideration, or usurious.
As to .the third exception, that the witness was incompetent on account of her husband's interest in the event of the suit. He was in possession of a part of the premises for which the action was brought, and the direct effect of a verdict against the defendant, would be, that the husband would be turned out of possession, and would be liable to mesne profits; and in such action the verdict and judgment would be evidence against him. Here then the husband had a direct and certain interest in the event of the suit: And although he himself might have given evidence for the plaintiff, he was not bound to answer against his own interests ; and the law will protect that interest from being impaired by the evidence of his wife. Where the husband's interest was uncertain or contingent, and where the verdict could not be given in evidence against him in another action, there the wife would be admissible, as in the case of Baring v. Reeder, 1 Hen. and Man. 154, and other oases to the same effect. But this is a case of a certain and vested interest; and the verdict here, will not only be evidence against him in an action for mesne profits; but the very basis of such action. Upon this ground, T am of opinion, that the court erred in receiving her testimony.
But lastly, it is'urged that she was incompetent on the ground of her own individual and separate interest in the event of the suit; as a verdict for the plaintiff, would restore her right of dower in the premises. Her right of dower is not such a direct interest as would exclude her evidence, it is contingent, depending upon her surviving her husband, and the verdict would not be evidence for her in an action of dower brought by her, and lastly, her own deed, whether fraudulent or not, unless it was a fraud practised upon her, would be a bar to a recovery in such case.
.Again, it is further insisted by the plaintiff, that even if the witness was improperly admitted on the ground of her husband s *105 interest in part of the premises, she was neverthelesss a competent- witness for the plaintiff, as to the other part, and that this court have a legal right to amend the verdict, by limiting it to the part not occupied by the husband; and in support of this position, we are referred to the case of Den, ex dem. Van Dyke v. Fouratt decided some time since in this court. In that case, the verdict was founded in a manifest mistake which appeared clearly from the judges’ notes of the trial. The proof of the plaintiff, which was wholly documentary, extended to five undivided eighth parts of the premises, whilst the verdict was general and rendered for the whole. The court, with the consent of the plaintiff, ordered the verdict to be amended. But this is not such a case, we have nothing here to amend by: and if the witness was incompetent to give evidence at all, under the circumstances of this suit, and the situation in which she was placed, her whole evidence must be rejected. This court cannot amend. I am of opinion that the rule to show cause should be made absolute.

Rule absolute.

Cited in State v. Wilson, 2 Vr. 79; Mulford v. Tunis, 6 Vr. 201.