## THE STATE v. GEORGE WILSON AND HENRIETTA WAGNER.

1. A husband cannot, in a collateral proceeding, be a witness directly to charge his wife with a crime which is of the grade of indictable offences.
2. This rule is founded in public policy and it will be applied—even though the wife is so circumstanced that she cannot be indicted for the offence so charged.

The defendants were jointly indicted for adultery. Henrietta Wagner, one of the defendants, being tried separately, was acquitted. On the trial of the other defendant at a subsequent term of the Oyer and Terminer of the county of Mercer, the husband of the female defendant who had been acquitted, was called as a witness to prove that he saw the parties in the criminal act. The court below, for the purposes of the trial, admitted the witness, but reserved the question for this court, whether such evidence was competent.

For the state, *J. F. Hageman.*

For the defendants, *E. W. Scudder.*

THE CHIEF JUSTICE. The husband, in this case, was admitted to prove that he saw his own wife in the act of adul-

tery. The trial was that of her paramour—the wife having been previously acquitted. The wife, therefore, is not to be regarded as a party to the record, nor as interested in the least in the result of the trial. And it is also to be noticed, that the testimony of the husband could not endanger the wife, for she had already been tried and discharged by judgment of law.

The testimony, therefore, if illegal, can be so only on the ground that it infringes the rule of law, which, in order to preserve the peace of the married life, prohibits husband and wife from convicting each other in a court of justice.

The existence of this rule has been recently called in question, in a very learned and ingenious opinion by Mr. Justice Earle, in the case in the Queen's Bench of *Stapleton* v. *Croft*, 10 *Eng. L. & Eq.* 455, in which it is insisted that the rule of exclusion which applies to husband and wife, as witnesses for or against each other, rests solely on the ground of the unity of their interest. But I think this is a novelty, and like most novelties is unsound. It is certain that if the rule exists only in the restricted form suggested, the language used by judges and law writers, from times immemorial, has been singularly loose and inapt. The rule is broadly laid down and is not restricted to cases in which the husband is interested. Thus it is stated in *Coke Litt.* 6, *b*—" It hath been resolved by the justices that a wife cannot be produced either against or for her husband *quia sunt duæ animæ in carne una ;* and it might be a cause of implacable discord and dissension between the husband and wife, and a means of great inconvenience."

In an anonymous case in *Brownl.* 47, it is stated—" The court was moved to know whether the wife of a bankrupt can be examined by the commissioners upon the statute of bankrupts? " And it is said, " by the common law she could not be examined."

In the same manner Chief Baron Gilbert, in his treatise on Evidence, a work eulogized by Blackstone in one of his notes, says, speaking of the wife as a witness, " the peace of

families could not easily be maintained if the law admitted any attestation against the husband."

But it is not necessary to pursue the line of cases, which are very numerous, and, as I think, very clear upon the point, for there is a decision of this court, prepared with evident care and exhibiting much research, in which the rule excluding husband and wife as witnesses for or against each other is put upon the broad ground of public policy. The case referred to is that of *Den, ex dem. of Stewart*, v. *Johnson*, 3 *Harr.* 87.

Assuming it, then, to be settled that the rule that disqualifies husband and wife as witnesses is not limited by the mere circumstance of interest, but extends with a view to the preservation of the domestic harmony beyond that point, the more difficult consideration is presented—what are the limits of the doctrine?

The general answer given in the books to this inquiry is, that the husband, the same principle of course applying to the female, shall not be permitted to give evidence to *criminate* his wife. This language is so general it obviously needs explanation. What *evidence criminates?* In a general sense, it is clear that the testimony of the husband in the case before us charged his wife with crime. Is such charge a crimination within the meaning of the rule above laid down?

*First*, then : the facts which the husband or wife is called to prove must directly criminate; it is not sufficient that they tend to impute a crime. The leading case upon this head is that of *Rex* v. *The Inhabitants of All Saints*, 6 *Maule & Sel.* 194. This was a question as to the place of settlement of a female pauper, who swore she was at a certain time married to a man then living. Another female was then produced by the other side, who testified that she had been married to the same man before his alleged marriage with the pauper. It was objected that this testimony of the first and consequently legal wife, criminated the husband, and was on that account illegal; but the Court of

King's Bench held it admissible, on the ground that it did not directly criminate. This case virtually overruled that of *Rex* v. *Cleviger*, 2 *T. R.* 752, which had stated the rule with much laxity, that such evidence was unlawful if its tendency was even indirectly to show that the husband or wife had been guilty of a crime.

The doctrine contained in the case of *Rex* v. *Bathwick*, 2 *Barn. & Adolph.* 639, was somewhat stronger. This was also a question of settlement, but with the peculiarity, that in it the husband had been examined and proved his marriage with the pauper. The first wife was then called and proved her previous marriage, and again the court maintained that there was no direct inculpation of the husband by the wife, inasmuch as the fact she proved did not criminate him, though its tendency was to do so.

Upon the strength of these authorities and some others of the same strain, Professor Greenleaf defines the modern rule in these words—"But though the husband and wife are not admissible as witnesses against each other, where either is directly interested in the event of the proceeding, whether civil or criminal, yet in *collateral proceedings* not immediately affecting their mutual interests, their evidence is receivable, notwithstanding it *may tend to criminate* or may contradict the other." 1 *Greenl. Ev.*, § 342.

But in the case now before this court the charge of the husband was direct; his testimony was that he came upon his wife *flagrante delicto*.

As the imputation was direct, the only consideration which remains is, was it a crimination within the meaning of the rule? As the wife had been tried and acquitted, the charge was of an offence for which she could not be indicted. In the case before referred to, of *Den, ex dem. of Stewart*, v. *Johnson*, 3 *Harr.* 94, this point received the consideration of the court, and it was there held that the evidence to be inadmissible must *charge a crime*. It was not enough that it attributed moral turpitude; a technical crime, that is, an act in its nature indictable, must be the direct imputation of the evidence. It was admitted that this rule was an imper-

fect one; that accusations in the form of evidence proceeding from husband or wife, against each other, of acts highly ignominious and disgraceful, though not indictable, would be sure to occasion family dissension; but the suggestion was rejected, and the rule as above stated was adopted on the ground of its eminent practicalness. It was said in the language of the judge delivering the opinion of the court, "what crimes involve moral turpitude we can settle with some degree of accuracy; but what charges, not amounting to crimes, involve moral fraud or turpitude is exceedingly difficult of solution." The object of the court was to establish a uniform and practical rule, easy to be understood and applied, and the criterion adopted was, that husband and wife were inadmissible for the purpose of directly charging each other with any offence which in its nature was indictable. The disqualification did not arise from the hazard which might result to the party accused of becoming subjected to a prosecution by reason of the evidence—that would have been to put the rule on the ground of interest—but from the fact that it was safe to assume that all offences which were indictable were of such disgraceful character, that if imputed by one married person against the other, ill will and want of harmony would be the inevitable result. The indictability of the offence merely fixed the grade of crime which might not be charged.

I think this rule, thus adopted, should not be narrowed. My inclination would be to extend it, if that could be legally effected, so as to prevent husband and wife from charging each other with any act which is essentially infamous in general estimation; but the authorities do not warrant such an amplification, and we must administer the law as it is handed down to us.

The case before the court comes within the rule excluding the testimony. The witness in the present case charged his wife with a crime in its nature indictable. The testimony, therefore, should not have been admitted.

BROWN, J., concurred.

APPROVED in *Ware* v. *State*, 6 *Vroom* 555.