10 N.J. Super. 513 (1950)
77 A.2d 477
LILLIAN ANNA SWANSON, PLAINTIFF,
v.
ERIC NORMAN SWANSON, DEFENDANT. On appeal from convictions of criminal contempt of Lillian Anna Swanson and John De Diminicantanio.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1950.
Decided November 2, 1950.
*515 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Abraham J. Slurzberg argued the cause for appellants (Mr. Joseph Persky, attorney).
Mr. Louis Santorf argued the cause as prosecutor for the court.
The opinion of the court was delivered by JAYNE, J.A.D.
A concise chronological narrative of some of the material antecedent events will serve to display the background which occasioned the proceedings under review.
On September 2, 1949, one of the appellants, Lillian Swanson, instituted a civil action in the Chancery Division of the Superior Court seeking a judgment of absolute divorce from her husband on the ground of desertion. She alleged in her complaint that at the time of the desertion she was a bona fide resident of the State of New Jersey and had been ever since the cause of action arose and for more than two years next preceding the commencement of the action.
Parenthetically, it seems evident that she subscribed to the conventional affidavits acompanying the original and amended complaints and to an affidavit of inquiry but never personally *516 appeared before the notary whose signature purported to give authenticity to the jurats.
At the final hearing before the Advisory Master to whom the cause was assigned, she and the other appellant, John De Diminicantanio, hereinafter designated as John De, testified that she had resided in the dwelling of John De at No. 1394 Ringwood Avenue, Haskell, Passaic County, New Jersey, continuously since June, 1946. There was also testimony relating to the employment of her husband by John De and to the school attended by her children, which was designed to bolster the proof of residence.
Evidently certain features of the presentation of the testimony aroused the suspicions of the Master, and he caused an investigation to be pursued which tended to confirm the conjectural apprehension of willful false swearing.
Pursuant to an order of the Superior Court conferring upon him the authority to conduct the prosecution, Louis Santorf, a counsellor-at-law, on March 15, 1950, filed a petition in the still pending matrimonial cause charging the appellants and one Eleanor Algozina respectively in three separate counts with criminal contempt of court. Whereupon, upon the advice of the Advisory Master, an order issued out of the Superior Court on March 15, 1950, addressed to the three accused directing them to show cause "before this court at the Chancery Chambers, Administration Building, No. 63 Hamilton Street, Paterson, New Jersey, on Tuesday the 28th day of March, next, at 10:00 o'clock in the forenoon or soon thereafter as the court may attend to the same why they, or each of them, should not be adjudged guilty of contempt of this court, criminal in nature, in that they made false, untrue and perjured statements, under oath, in the proceedings held by this court in the above entitled matter, and for the filing of false and improper pleadings and affidavits in such cause."
Copies of the petition and order were served upon John De and Eleanor Algozina personally within the State, but the service was made upon Mrs. Swanson in the State of New York.
*517 At the inception of the hearing before the Advisory Master on March 28, 1950, a severance of the prosecutions was granted on the application of Mr. Santorf. The hearing of the charge against Eleanor Algozina was adjourned. The trial of Mrs. Swanson was thereupon moved.
Counsel for Mrs. Swanson, announcing that his appearance and that of his client was special and qualified, initially presented several motions of a jurisdictional pertinence to one of which specific reference will be hereinafter made. He subsequently interposed most of the same objections on behalf of John De, whose trial immediately followed. The motions were denied, and the Master advised the entry of a judgment adjudging the present appellants guilty and that Mrs. Swanson be sentenced to serve a term of imprisonment of sixty days in the common jail of Passaic County, and John De be given a sentence of thirty days. Such judgments were accordingly entered by a judge of the Superior Court.
Counsel has marshalled eleven points in his studiously prepared brief. However, we are obliged to remark at the outset that several of the points so well devised have been adjudicated in the very deliberative opinion rendered by Vice-Chancellor Berry in In re Caruba, 139 N.J. Eq. 404, 51 A.2d 446 (Ch. 1947); affirmed, 140 N.J. Eq. 563, 55 A.2d 289 (E. & A. 1947), and in the decision recently filed in Zimmerman v. Zimmerman, 12 N.J. Super. 61 (App. Div. 1950), relating to cognate questions which have arisen in view of the transformed court structure erected by the new Constitution.
The subjects embraced by those decisions pertain to (a) the power and authority of an Advisory Master to hear and advise the judgment to be entered in a contempt proceeding; (b) whether perjury or false swearing by a witness before a Master in a cause in Chancery constitutes contempt and whether punishment therefor may be lawfully imposed; (c) whether an actual obstruction of the administration of justice is essential to the offense; (d) the inherent power of Chancery independent of statutory authority; (e) the power of the Legislature to impair the inherent jurisdiction of Chancery; *518 (f) whether contempt either civil or criminal may now be lawfully prosecuted in the action in which it occurs, Rule 3:80-2; and (g) the nature and scope of an appeal to the Appellate Division of the Superior Court.
The former opinion in the Caruba case having been affirmed by the Court of Errors and Appeals, and the latter in the Zimmerman case being a decision of this court, a reproduction here of the determinations lucidly expressed in those precedents would be conspicuously redundant, and an undertaking by this court to remodel them would be inexcusably presumptuous.
We accordingly regard them as decisive of the points to which they relate, many of which are sought to be projected anew in the argument of the present appeals.
The separate trials of the appellants under materially divergent circumstances oblige us to deal with each conviction independently.
The ground of appeal among those assigned on behalf of the appellant Mrs. Swanson, which predominantly engages our attention, is that in the proceedings against her the court lacked jurisdiction of the person of the accused.
It is to be immediately acknowledged that (a) Mrs. Swanson invoked the jurisdiction of our Superior Court in quest of a judgment of divorce; (b) that the matrimonial action remains undetermined and undismissed; (c) that the petition and order to show cause are entitled in the main action; (d) that the petition and order to show cause in the contempt proceeding were not served upon Mrs. Swanson within the State; (e) that Mrs. Swanson was personally present at the hearing before the Master; and (f) that the judgment embodies a sentence of imprisonment.
It is fundamentally imperative in the consideration of these appeals to recognize the significant distinction between civil and criminal contempts.
A civil contempt proceeding is essentially remedial. Its usual object is to coerce a party for the benefit of another party to do or refrain from doing some act specified in the *519 order of the court. And so, if imprisonment be ordered, it is coercive in character but nevertheless remedial in purpose, and to that end relates to something to be obeyed by the accused by the compliance with which he may discharge himself.
Contempts classified as criminal contempts, as the designation itself implies, are dissimilar in that they are intrinsically offenses against organized society. True, they may "occur" in the course of a private litigation and bear that relationship to the civil cause, but basically they raise an issue between the public and the accused. Hence, if imprisonment be imposed in a proceeding for criminal contempt, it is by analogy with the criminal law punitive in its purpose. There are numerous illustrative decisions, a generous supply of which may be found in the footnotes in 12 Am. Jur. 392, § 6. Of our own adjudications it will suffice to cite Staley v. South Jersey Realty Co., 83 N.J. Eq. 300, 90 A. 1042 (Sup. Ct. 1914).
Assuredly Mrs. Swanson and, indeed, John De as well were each charged with the commission of a criminal contempt.
In 1924 Chancellor Walker very definitely held that although the process may be an order to show cause, yet "such process must be served within this state to lawfully initiate a proceeding against a person charged with criminal contempt of court." (Emphasis his.) Brown v. Brown, 96 N.J. Eq. 428, 430, 126 A. 36 (Ch. 1924).
In the decision rendered in In re Hayden, 101 N.J. Eq. 361, 139 A. 328 (Ch. 1927), fundamental significance was ascribed to the fact that "the respondent was duly served with the order to show cause."
The attitude of the special prosecutor toward the respondent's objection to the jurisdiction may be divulged as an incident of the proceeding. He said:
"If your Honor please, in view of the challenge to the jurisdiction of the Court insofar as the service upon Mrs. Swanson is concerned, we must advise the Court that service was had upon Mrs. Swanson personally in the State of New York and there is no question in my *520 mind that we cannot force her to come into the State of New Jersey on that order to show cause. * * * In view of that, we will now move to vacate the order to show cause and issue an order of attachment against the defendant Swanson  she is here  and have her committed to the county jail as provided by the attachment, as provided by the rules. * * *"
The Master, however, chose to overrule the challenge addressed to the jurisdiction, declined to issue the suggested attachment, and proceeded to conduct the hearing.
It seems manifest that the court did not acquire jurisdiction of the person of Mrs. Swanson by due service of the order unless it is supposed that the promulgation of Rule 3:80-2 transubstantiated criminal contempt. The rule directs that contempts, whether of a civil or criminal nature, "shall be prosecuted in the action in which it occurs."
We decline to believe that it was intended by means of the adoption of that rule so substantively to catabolize the distinct offense of criminal contempt as to eradicate the primordial divergencies between civil and criminal contempt.
"The distinction between substantive law, which defines our rights and duties, and the law of pleading and practice, through which such rights and duties are enforced in the courts, is a fundamental one that is part of the daily thinking of judges and lawyers. Substantive law includes much more than legislation, it comprehends also the rights and duties which have come down to us through the common law. * * *
"We therefore conclude that the rule-making power of the Supreme Court is not subject to overriding legislation, but that it is confined to practice, procedure and administration as such." Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950).
A prosecution for criminal contempt is veritably a criminal trial in which the accused possesses most of the substantial rights of a person accused of crime, among which are the presumption of innocence, the burden of proving the alleged guilt beyond a reasonable doubt and the rules of evidence applicable in the trial of an indictment. In re United Hatters, &c., 110 N.J. Eq. 42, 158 A. 435 (E. & A. 1932); *521 Staley v. South Jersey Realty Co., supra; In re Ries, 101 N.J. Eq. 315, 138 A. 586 (Ch. 1927).
The broad object of the new rules is to achieve simplification and uniformity of procedure. Formerly proceedings to punish for criminal contempt were not to be entitled in the cause in which the contempt occurred. To do so, was a fatal defect. Illustrative authorities are cited in Patco Products Co. v. Wilson, 140 N.J. Eq. 91, 53 A.2d 214 (Ch. 1947).
A similar technical practice related to the entitling of affidavits in applications for a writ of capias or a writ of attachment. The promulgation of Rule 3:80-2, like Rules 3:64-1 and 3:72-1, was intended only to remove those technical and disadvantageous formularies of our former practice.
The mere circumstance that the contempt proceeding is entitled in the divorce suit is of itself of no moment. Compare, Schuster v. Schuster, 9 N.J. Super. 11, 74 A.2d 420 (App. Div. 1950).
We recognize such a proceeding so analogous to a criminal prosecution as one in personam in which the court can acquire jurisdiction over the accused only by service of process or notice within the State or by the voluntary appearance of the accused. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877); cf. Elgart v. Mintz, 123 N.J. Eq. 404, 411, 197 A. 747 (Ch. 1938).
Its title or label may now give it the ostensible appearance of a motion or integral component of the action in which the alleged public offense occurred, but the proceeding inaugurated to determine the guilt or innocence of the accused continues in truth and reality to be a new, independent, and collateral matter, certainly in so far as jurisdiction of the person is required to enable the court to impose a sentence of imprisonment. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 76 L.Ed. 389 (1932).
The circumstance that the appellant originally invoked the jurisdiction of the court in quest of a judgment of divorce *522 does not in our judgment confer jurisdiction over her for the purposes of the adverse prosecution against her of the charge of criminal contempt. Both Chief Justice Beasley and Justice Holmes expressed the view that "Persons, by becoming suitors, do not place themselves, for all purposes, under the control of the court." Munday v. Vail, 34 N.J.L. 418, 422 (Sup. Ct. 1871); Ex parte Indiana Transportation Co., 244 U.S. 456, 61 L.Ed. 1253 (1916).
Along much the same channel of argument anent Rule 3:80-2 is the proposition that since Mrs. Swanson personally appeared at the hearing and special appearances are now abolished by Rule 3:12-2, her presence not only constituted a waiver of her objection but subjected her to the jurisdiction of the court.
Here, again, the technology in the art of procedure formerly appeared in the field of special and general appearances. It, too, was called one of the cobwebs of the procedural law. See 69 N.J.L.J. 372 (1946).
In speaking of Federal Court Rule 12 to which our Rule 3:12-2 is comparable, Judge Maris remarked that he who appears specially to attack the court's jurisdiction over him, "is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within." Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir. 1944); cert. den., 64 S.Ct. 1057, 322 U.S. 740, 88 L.Ed. 1573 (1944).
The following excerpts from the record are sufficient to disclose the preliminary objection to jurisdiction promptly announced in the proceeding under consideration:
"The Court: The application for a continuance will be denied, the two main respondents that are present will step forward and enter their pleas.
"Mr. Slurzberg: Before the parties enter their plea, I would like at this time to plead to the jurisdiction of the court. I ask the Court if I may examine the returns of the service in this matter."
*523 The original petition and order to show cause bearing evidence of the service upon appellant Mrs. Swanson were not at hand. Whereupon her counsel stated:
"We are here in respect to these orders, only in respect to them. We are not answering those until we establish that this Court has jurisdiction and this Court cannot pass upon jurisdiction until the return is examined and it is established that it was made according to law. * * *
"The grounds  I can't argue the grounds without having the return before your Honor and your Honor cannot make a premature ruling on something that is not in the record in this matter.
"I will tell you the ground. This Court has no jurisdiction over Miss SWANSON in that, as I understand the facts, service of process was made upon her in the State of New York beyond the jurisdiction of this Court and without power."
We conclude that in such circumstances Mrs. Swanson did not waive her objection to the jurisdiction or to the sufficiency of process. Federal Landlords Committee v. Woods, 9 Fed. Rules Decisions 622; Johnson v. Scarborough, 88 Fed. Supp. 523 (1949).
In our review of the proceedings against Mrs. Swanson we have also observed the point that Mr. John De was called as a witness for the prosecution, and in giving testimony against Mrs. Swanson was obliged over objection to incriminate himself. The point is not available to Mrs. Swanson. The privilege of the witness is personal, and although he may be improperly compelled to testify, the error cannot be asserted by the party. Phleps v. Phleps, 133 N.J. Eq. 392, 396, 32 A.2d 81 (E. & A. 1943); Cloyes v. Thayer & Morse, 3 Hill (N.Y. Supp.) 564, 566 (1842); State v. Davis, 208 La. 954, 23 So.2d 801, 811 (1945); Samuel v. People, 164 Ill. 379, 45 N.E. 728, 729 (1896).
There is, however, an additional feature of her case that has not escaped our attention. The wife of John De was directed by the Master to give testimony which was incriminatory of her husband. The Master presumably entertained the opinion that since there had been a severance, the trial of Mrs. Swanson was a collateral proceeding in which Mrs. John De would be a competent witness.
*524 Justice Kalisch, who delivered the opinion of the court comprised of Chief Justice Gummere, Justice Parker, and himself, stated in State v. Herbert, 92 N.J.L. 341, 105 A. 796 (Sup. Ct. 1918): "The reception by the court of the testimony of Charles A. Knittel, which testimony tended to accuse his wife, Helen Knittel, in whose behalf a severance had been previously granted, with the crime of which she stood indicted, in conjunction with the plaintiffs in error, who were then on trial under said indictment, was error which requires a reversal of the judgment." Additional pertinent citations are: Stewart v. Johnson, 18 N.J.L. 87 (Sup. Ct. 1840); State v. Wilson, 31 N.J.L. 77 (Sup. Ct. 1864); Ware v. State, 35 N.J.L. 553 (E. & A. 1871); Wieczerzak v. Wieczerzak, 115 N.J. Eq. 89, 169 A. 632 (Ch. 1934); 58 Am. Jur. 128, § 180.
Here the husband stood charged with a contumacious offense of an indictable nature. The question concerning the admission of the testimony of Mrs. John De does not implicate so much the matter of privilege (R.S. 2:97-9, N.J.S.A.) as it does the subject of its competency (R.S. 2:97-4, N.J.S.A.).
The conviction of John De remains to be considered. Most of the grounds of appeal presented on his behalf are among those heretofore abrogated by the decisions rendered in the Caruba and Zimmerman cases. In his case the propriety of the service of the order to show cause is not impugned. Its service upon him was made within the State.
Obviously his plea of not guilty was based upon the legalistic grounds specified in his appeal and not upon any denial of the accusation that he testified falsely. He had voluntarily subscribed to a frank confession, which was received in evidence in the proceeding prosecuted against him. He refrained from testifying.
This court is directed to exercise such original jurisdiction as may be necessary to the complete determination of any cause on review. Rules 1:4-10 and 4:4-7. Re review of contempt proceedings, vide R.S. 2:15-3 to 6, N.J.S.A., as am. L. 1948, c. 333, §§ 1, 2.
*525 "Our function is not merely to affirm or to reverse and remand for a new trial, but to find the appellant guilty or not guilty, and if we find him guilty, to impose such punishment as the law permits and seems to us just." Zimmerman v. Zimmerman, supra.
It is within that area of appellate authority that we conclude that the appellant John De Diminicantanio is guilty of the alleged contempt in that he knowingly and willfully swore falsely in the judicial divorce action conducted in the Superior Court. It is our judgment that he be sentenced to a term of imprisonment of thirty days in the common jail of the County of Passaic.
We are persuaded that the conviction of the appellant Mrs. Swanson must be reversed. The reversal, however, does not constitute an adjudication of the guilt or innocence of the appellant on the merits.
In the consideration of these two appeals, the legally significant circumstances of the one were essentially different from those of the other, thus calling for the application of dissimilar principles of law. And so, the seemingly anomalous results were consequently necessitated.