IN THE MATTER OF PETER KERRIGAN. ON HABEAS CORPUS.

1. The power to punish by commitment for contempt, is a power belonging only to judges of certain courts, and does not arise from the mere exercise of judicial functions.
2. The power, so far as it may be exercised by judicial officers, is an incident to a court, belonging alike to civil and criminal jurisdiction, but not extending, at the common law, below such as are courts of record recognized in the common law.
3. Magistrates and others, empowered to fine and imprison in a summary way, are judges of record *quo ad hoc*, and their judgments and convictions should be recorded. Such recording may have the conclusive effect of protecting them in their judicial action, but will not raise these tribunals to the dignity of common law courts of record.
4. Where the recorder of Hoboken, being only a judge in summary proceedings, and without ministerial power to commit in execution, committed a party for contempt, his action was entirely outside his jurisdiction.
5. If the party was guilty of contempt, his offence could only be punished by indictment.

The writ of *habeas corpus* in this case, having been made returnable before Mr. Justice Bedle, and the case having been by him referred to this court, it was heard at this term, *in*

In the matter of Peter Kerrigan.

*banc,* before BEASLEY, C. J., and Justices BEDLE, DALRIM-PLE and DEPUE.

The facts sufficiently appear in the opinion of the court.

*Abel I. Smith* and *William T. Hoffman,* appeared as counsel of the prisoner, and moved that he be discharged.

*J. C. Besson* and *A. S. Boyd,* appeared for the recorder of Hoboken, and opposed the motion.

BEDLE, J.  Peter Kerrigan was held by the jailor of Hudson county under a commitment signed by James Pope, as recorder of the city of Hoboken, for an alleged contempt in using insulting language to him while sitting in the trial of certain persons for violating a city ordinance, in not cleaning sidewalks and gutters. For this offence he summoned him to appear and answer, tried and found him guilty of contempt of court, and ordered him imprisoned in the county jail for fifteen days. The writ of *habeas corpus* was issued and made returnable at chambers, and referred to this court for determination. The chief question involved is as to the jurisdiction of the recorder to commit in execution for this contempt. The recorder is elected under a supplement to the act to incorporate the city of Hoboken, approved March 21st, 1865, (*Laws* 1865, *p.* 412,) and given all such powers and authority in the city of Hoboken as were conferred by law upon the recorder in Jersey City. By the act to incorporate Jersey City, (*Laws* 1851, *p.* 398, § 16,) the recorder of Jersey City has all powers, *in criminal matters,* that justices of the peace in and for the several counties *of the state* have, and like powers with the mayor, to cause to be arrested and committed, without process, any person guilty, or that he may have reason to believe guilty, of any crime or misdemeanor, or breach of the peace, and to try all causes and complaints arising *from the violation of any city ordinance.* By a supplement of April 12th, 1864, (*Laws*

1864, *p.* 713,) the recorder of Jersey City was also author-ized to inflict such fines not exceeding ten dollars on such persons as shall be brought before him and charged with vagrancy, disorderly conduct, breach of the peace, or any other light offence; or in his discretion to order such per-sons committed to the county jail or workhouse for any period not exceeding sixty days. In the trial of complaints for violation of city ordinances, the recorder, both by the terms of the Jersey City charter and Hoboken charter, may issue a summons or warrant specially provided for, stating what ordinance has been violated, and in what manner violated; and then, after the return of the process, proceed to hear and give judgment, without the filing of any pleadings, and issue execution on the judgment against the goods and person of the defendant; and where the fine shall exceed a certain amount, or the punishment may be imprisonment, there may be a trial by jury, to be conducted as in cases triable by jury in the courts for the trial of small causes, and an appeal may be had as in cases where an appeal may be had from judg-ments in courts for the trial of small causes. By the Hobo-ken charter, (*Laws* 1855, *p.* 467,) the common council could not authorize the punishment for violation of their ordinances beyond fifty dollars of fine, or ten days imprisonment in the city prison. It will thus be seen that the recorder has cer-tain ministerial powers, in *criminal* matters, the same as a justice of the peace, and certain powers of a judicial nature as to violations of city ordinances and vagrancy, and other light offences. He has no power to hold a court for the trial of small causes; and although some of his proceedings are to be conducted in analogy to those in that court, yet he is not empowered to hold a court of even that limited jurisdiction. To punish by a commitment for contempt is a power belong-ing only to judges of certain courts, and does not arise from the mere exercise of judicial functions. The power is great, and its exercise without review, where there is jurisdiction, and hence our duty to be careful not to extend it beyond the recognized bounds of the common law. The recorder did

In the matter of Peter Kerrigan.

not commit in default of sureties to keep the peace, or to answer before the oyer or sessions, but his commitment was in execution by way of punishment. That power, so far as it may be exercised by judicial officers, is an incident to a court, belonging alike to courts of civil and criminal jurisdiction, but not extending, at the common law, below such as are courts of record recognized in the common law. The general doctrine of the English law is, that all courts of record may fine or imprison for contempts in the face of the court. 2 *Hawkins' P. C., ch.* 22, § 1; *Ib., ch.* 1, §§ 14, 15; *King* v. *Davison*, 4 *B. & Ald.* 329; *King* v. *Clement, Ib.* 218; *Griesley's case*, 8 *Coke* 38; *Murray's case*, 1 *Wilson* 300.

That includes the courts of Westminster, the courts of Nisi Prius, Oyer and Terminer, Quarter Sessions, and others of the grade of courts of record in the course of the common law. To this rule there may be an exception in the Court Leet, so far as punishing by *imprisonment* is concerned, the usual mode of punishment in that court being by fine, and therefore the power to imprison for contempts in that court has been questioned. But without discussing the exceptions, it is sufficient to say that the rule is generally as stated, and is not extended to the county courts of England, or any below the grade of courts of record. And as early as Griesley's case, already cited, (during 30*th Elizabeth*) it was resolved, in the Common Pleas, that courts which are not of record cannot impose a fine, or commit any to prison, for contempts. A power to fine or imprison in such cases, although necessary for the proper discharge of the duties of a court not of an inferior jurisdiction, and for the maintenance of its independence and dignity, should not belong to all persons, bodies, or tribunals, who may have a judicial duty to perform. The common law, wisely, did not recognize it in courts below those of record; and we would be doing violence to the liberty of the citizen to encourage its existence in any of our own courts, except those that, in their very nature, or from analogy to their English models, or in their constitution, are courts of record, with jurisdictions not

beneath the character of those so treated in the common law. The recorder, as already stated, cannot hold even a court for the trial of small causes; and could he, it would be difficult to find, in that inferior jurisdiction, any warrant for the power claimed, although it is unnecessary to determine that question now. His proceedings, outside those strictly of a criminal nature, as a justice of the peace, are entirely statutory and summary, and are well known in the law as summary proceedings. His right, whether to punish for vagrancy and disorderly conduct, or to try causes and complaints for a violation of city ordinances, is of that special character. To such proceedings the common law is a stranger, (3 *Blackstone* 280) and magistrates who are empowered by statute to exercise them, cannot be regarded as judges of a court of record in the sense indicated. They have a special jurisdiction, not in the course of the common law, but summary, as understood in the law; and the legislature has justly been careful not to give them this great power of the higher courts. The power of the recorder to fine and imprison, in a very limited degree, does not create his jurisdiction, *ipso facto*, a court of record. It was a principle of the common law that only courts of record could fine and imprison, and therefore the idea is found in some of the books, that the creation of a new jurisdiction to fine and imprison, made it instantly a court of record; but that is not correct as to jurisdictions for summary proceedings to fine and imprison, and would not be correct as to jurisdictions not equal in degree to those of the well known courts of record at the common law. The more correct view is, that magistrates or others empowered to fine and imprison in a summary way, are judges of record *quo ad hoc*, and their convictions and judgments are to be made matters of record —that is, a record is to be made of them, which may have the conclusive effect of a record, and protect the judge in his judicial action, but does not raise his tribunal to the dignity of a common law court of record. This distinction between the action of a judge of a court of record, and a judge of

record in a certain sense, will clear up much of the difficulty, to which an examination of the books may lead without regarding it.

. As a ministerial officer, the recorder could not commit by way of punishment. The powers of a justice of the peace were originally ministerial entirely, (*Schrœder* v. *Ehlers*, 2 *Vroom* 146,) consisting chiefly in preserving the peace, receiving complaints, issuing his summons or warrant, taking the examination of witnesses, and of the informant, binding them over, and bailing or committing the accused. 3 *Black.* 354, *note.* In the discharge of all his ministerial duties, I can find no English case that directly establishes a right to punish for contempts. He may require security for the peace, or commit in default thereof, or take recognizance to appear at the oyer or sessions, or commit in default of bail. For immediate relief, he could remove the offender from his presence, and for personal redress for words against him in his official character could maintain an action. There are some dicta in cases imperfectly reported, giving encouragement to the existence of the power claimed in the magistrate, but there is no adjudication that I have discovered in the English books directly on the point, and as late as 1822, in the King's Bench, the power was questioned as it had been before, and the court avoided expressing any opinion upon the subject, deciding the case on another ground, (*King* v. *James*, 5 *Barn. & Ald.* 894,) and we ought not to hold it to be possessed under the ministerial duties of the magistrate, without a direct recognition in the common law. It is well to remark that some expressions of judges have been embodied in the texts of authors, as gathered from the dicta referred to, which have given color to the notion that a justice of the peace, as a magistrate, may punish for contempts, in his presence, but they are entirely destitute of the force of decision, and may be mostly explained by the indefinite use of the word commit, not discriminating between its use in the sense of committing in default of sure-

ties for the peace, or of bail to answer before a criminal tribunal on an indictment, or to commit in punishment.

The recorder being only a judge in summary proceedings, and without ministerial power to commit in execution, his action was entirely outside his jurisdiction. If Kerrigan was guilty of contempt towards the recorder, while in the execution of his office, and on that point no opinion is intended, his offence could only be punished by indictment, and not under any of the summary powers of the recorder. The offence is indictable at common law, and Kerrigan had a right to be tried in the usual way, before a jury. To compel sureties for the peace, or bail to answer an indictment, or to commit in default of either, besides the other remedies stated, are powers sufficiently adequate to protect these inferior jurisdictions from obstruction, and he who disturbs them, although they may be inferior in a legal sense, should understand by the penalties of a conviction on an indictment, that they perform a very important and necessary part in the administration of the laws, both general and local, and will receive the full protection that punishments for misdemeanors can secure. The proceedings before the recorder were void, and Kerrigan must be discharged.

The CHIEF JUSTICE, and Justices DALRIMPLE and DEPUE, concurred.