Rhinehart v. Lance.

RHINEHART v. LANCE ET AL.

A justice of the peace sitting in the court for the trial of small causes, engaged in the trial of a civil cause, has no power to commit to prison as a punishment for a contempt committed in open court.

On demurrer. In trespass for false imprisonment.

The defendants pleaded that Lance, one of the defendants, was a justice of the peace: that while he was holding a court for the trial of small causes and engaged in the trial of a cause, the plaintiff entered the room where the said court was being held and commanded a witness who was under examination to leave the court-room, and called the justice a fool and a nuisance, and that thereupon the witness left the room before his examination was concluded ; that the said justice issued a summons for the appearance of the plaintiff to show cause why he should not be attached for contempt; that the plaintiff appeared, and after a hearing was adjudged guilty of a contempt; that the justice thereupon committed him to the county jail for the period of ten days, as a punishment for the contempt adjudged against him, and issued his

warrant accordingly, for the plaintiff's arrest and commitment, which was executed by the plaintiff's imprisonment in the county jail.

This plea was demurred to.

Argued at February Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *Oscar Jeffery.*

For the defendant, *John T. Bird.*

The opinion of the court was delivered by

DEPUE, J.  The object of the demurrer is to raise the question whether a justice of the peace sitting in the court for the trial of small causes has power to commit for a contempt committed in the presence of the court while engaged in the trial of a civil cause.  The commitment of the plaintiff was for the period of ten days, for the contempt adjudged against him.

It must be conceded that the plaintiff's conduct, as averred in the plea, was outrageously improper, and that if he so misconducted himself he deserved the punishment he received. But we must not, by our disapprobation of the plaintiff's conduct, or by the justice of the punishment he received, be led away from the real question in issue—the power of a justice of the peace to commit for contempts when sitting in the court for the trial of small causes.  If the power in question resides in the class of judicial officers to which the defendant belongs, it is a power which may be exercised for a less flagrant offence, and followed by an imprisonment for a year, or a longer term, as well as for a single day, without its exercise being subject to revision or review, except in mere matters of form.

The power to commit at discretion and for a discretionary term of imprisonment is a transcendent prerogative power.

"The power which the courts in Westminster Hall," said Wilmot, C. J., "have of vindicating their own authority, is coeval with their first foundation.   *   *   *   I have carefully examined to see if I could find out any vestiges or traces of its introduction, but can find none.   It is as ancient as any other part of the common law." *Rex* v. *Almon, Wilmot's Opinions* 254.   It seems to have had its foundation on the theory that contempt in the presence of, or of the authority of, the king's courts, was a contempt of the royal authority itself.

At common law the power to punish, by fine or imprisonment, contempts, even such as were committed in *facie curiæ*, was given to courts of record only.   In 30 Eliz. it was resolved that if any contempt or disturbance to the court be committed in any court of record, the judges might set upon the offender a reasonable fine ; but that courts which are not of record cannot impose a fine or commit to prison.   *Griesley's case,* 8 *Co.* 75 ; *Godfrey's case,* 11 *Co.* 43 *b*.   None but courts of record can either fine or imprison ; hence, when any new authority is constituted with power to fine and imprison, the persons invested with such authority become a court of record.   *Groenvelt* v. *Burwell,* 1 *Comyn* 79.   Mr. Hawkins expressly lays it down that only such courts as are courts of record may fine or imprison for contempts in the face of the court.   3 *Hawk.* 5, §§ 14, 15.   All courts of record are the king's courts, in right of his crown and royal dignity, and therefore every court of record has authority to fine or imprison for contempt of its authority ; but the courts not of record—or those, at least, in which the common law is administered—are of inferior dignity, and in a less proper sense the king's courts, and therefore are not entrusted by the law with the power to fine or imprison, unless by the express provision of some act of parliament.   3 *Steph. Com.* 383, 384.

Expressions are frequently used in the books distinguishing between superior and inferior courts, which are erroneously cited in support of the power of inferior courts, not of record, to commit for contempt.   This classification of courts of

record is made by Sir Matthew Hale. He says: "The courts are of two kinds: 1. Courts of record; 2. Not of record. *First.* Of courts of record there is this diversity, viz.: 1, supreme; 2, superior; 3, inferior." The latter he styles inferior courts of record. *Hale's Analysis of the Law* 35, 36 ; *Bac. Ab.*, "*Courts,*" *D*, 1. This distinction is commented on by counsel and by Erle, C. J., and Willes, J., in *In re Fernandez*, 10 *C. B. (N. S.)* 3, 27–41, and concerns only the question as to the power summarily to punish contempts committed *extra curiam* as well as in *facie curiæ*, and the form and contents of the process of commitment. *In re Sheriff of Middlesex*, 11 *A. & E.* 273 ; *Ex parte Pater*, 5 *B. & S.* 299. It has no pertinency to the power of inferior courts, which are not courts of record, to commit for either cause.

I do not find in the English cases any judicial adoption of a principle so broad, as that power to fine or imprison for contempts is necessarily inherent in every court of justice, without regard to the grade or constitution of the court. The claim by Sir William Blackstone of such a power as resulting from the first principle of judicial establishments was made only in behalf of the supreme courts of justice, as an inseparable attendant upon every superior tribunal. 4 *Bl. Com.* 286. The passage so often quoted from the opinion of Chief Justice Wilmot, in *Rex* v. *Almon, supra*, that such a power is a necessary incident of every court of justice, whether of record or not, was manifestly designed to have no broader application. The Chief Justice cites *Sparks* v. *Martyn*, 1 *Vent.* 1, which was an application to the King's Bench for a prohibition to restrain the Court of Admiralty from enforcing an attachment for a contempt for taking a ship and taking the sails from it, from an officer who was executing the process of the court against the ship. The King's Bench denied the prohibition, saying that the Court of Admiralty may punish one that resists the process of the court, and may fine and imprison for a contempt to the court acted in the face of the court, though *it* be no court of record. The High Court of Admiralty was among the most ancient of

the English courts. "The admiral and Court of Admiralty have been time out of mind, and so it was said in the time of Richard I." *Com. Dig.*, "*Admiralty*," *A.* Its jurisdiction was civil and criminal. On the criminal side it had cognizance of piracy and of murder, and all felonies committed on the high seas. As a criminal court it possessed most extensive powers, including the power to pronounce sentence of death. *Com. Dig.*, "*Admiralty*," *E.* As a civil court, by the custom of the court, it had power to amerce the defendant for his default, at its discretion, and to make execution thereof upon his goods, and for want of goods to take his body. 2 *Bac. Ab.* 746 ; the case of *The Admiralty*, 13 *Co.* 52. Inasmuch as its proceedings were according to the method of the civil law, for that reason it was not considered as a court of record. 3 *Bl. Com.* 69. But it had, by its constitution, the essential attribute of a court of record—power to fine and imprison—and, in the magnitude of its jurisdiction, was on an equality with the courts at Westminster Hall. The court had all the qualities of a court of record, except that its procedure being regulated by its own peculiar laws and usages, its sentences, for technical reasons, were not considered as its record.

It is entirely clear that among courts proceeding according to the common law, the power of summarily punishing contempts depended upon whether or not the court was a court of record. The most recent English case on the subject, was argued and decided upon that assumption. *Queen* v. *Lefroy*, *L. R.*, 8 *Q. B.* 134. This court, in *Ex parte Kerrigan*, 4 *Vroom* 345, decided that the power resides only in such courts as were courts of record recognized in the common law, and that it did not pertain to other courts, simply because they had judicial functions to perform.

Reference is also frequently made to the jurisdiction at common law of the sheriff's tourne and court leet to punish contempts, as an illustration of the exercise of that power by courts of an inferior grade. But this is a misapprehension of the dignity of these courts before Magna Charta. Sir Ed-

ward Coke says that of the ancient time the sheriff had two great courts, viz., the tourne and the county court; and afterwards the view of frankpledge, or leet, was, by the king, divided from the tourne and granted to the lords. The tourne and leet were both king's courts of record, and were of one and the same jurisdiction. The former was a court of crimi-. nal jurisdiction, having cognizance, by indictment, over all felonies which were such at common law. Its powers were restrained by Magna Charta, and both courts have since declined in public estimation. 1 *Inst.* 71 ; 4 *Id.* 259, 261 ; 1 *Hale* 69.

The power of the courts at Westminster Hall, of the Courts of Equity, the Court of Oyer and Terminer, Courts of Assize and Nisi Prius and Quarter Sessions of the Peace, to punish contempts by summary proceedings, is fully established. *In re Cobbett,* 7 *Q. B.* 187 ; *Lechmere Charlton's case,* 2 *Myl. & C.* 316 ; *In re Fernandes,* 6 *H. & N.* 717 ; 10 *C. B.* (*N. S.*) 3 ; *Ex parte Pater,* 5 *B. & S.* 297 ; *Rex* v. *Davison,* 4 *B. & Ald.* 329 ; *Rex* v. *Clement, Id.* 218. But, though there are *dicta,* and perhaps decisions, in the older cases affirming such a jurisdiction in justices of the peace, yet it will be observed that in the later cases the English judges studiously refrain from an expression of opinion that the power is possessed by justices of the peace to commit for contempts, even in their presence, except when sitting in the Sessions. *Cropper* v. *Horton,* 8 *Dow. & Ry.* 166 ; *Rex* v. *James,* 5 *B. & Ald.* 894 ; *Paley on Convictions* 238, *n.,* 241, *n. ; Pettit* v. *Addington, Peake N. P.* 62. The two houses of parliament have the undoubted power to punish contempts by fine or imprisonment, a power derived from the law and ancient usages of parliament. Yet the English courts deny the same authority, in the absence of an express grant, to colonial legislatures established by act of parliament. *Doyle* v. *Falconer, L. R.,* 1 *P. C.* 328 ; *Kielly* v. *Carson,* 4 *Moore P. C.* 63 ; *Fenton* v. *Hampton,* 11 *Id.* 347 ; *The Speaker, &c.,* v. *Glass, L. R.,* 3 *P. C.* 560 ; *Ex parte Brown,* 5 *B. & S.* 280.

Following common law precedents and principles, the power to summarily punish contempts by fine and imprisonment must be assigned to such of our courts as, in constitution and jurisdiction, are modeled after the courts which possessed that power at common law. But with regard to courts created by act of the legislature, with limited and special statutory jurisdictions, whose powers and modes of procedure are prescribed and defined by statute, a different rule must be applied. When a new court is erected, it is necessary that the jurisdiction and authority of the court be certainly set down ; the court can have no other jurisdiction than is expressed in its erection, for the new court cannot prescribe. 4 *Inst.* 200. In such a newly-created court such incidental powers as are necessary to enable it properly to perform its judicial functions will be implied. But the extraordinary power of adjudging a contempt and fixing the fine or imprisonment, without any limitation except discretion, as the penalty for the offence, ought not to be conceded to such a court in the absence of a clear expression of the legislative intent to confer such a power upon it.

The court for the trial of small causes is an inferior court of limited jurisdiction, created by statute, with special statutory powers and a statutory method of procedure. Its jurisdiction is limited to certain civil actions, in which amounts within a designated sum are involved. Every step in its procedure, from the summons to final judgment and execution, is specially provided for and prescribed. As contrasted with other courts in the state, the legislative purpose to give it a subordinate position, and to confine its powers within as narrow a limit as will be consistent with its ability to perform its functions, is clearly indicated in the act by which it is created. The first section, which creates the court, declares that certain suits of a civil nature shall be cognizable " before any justice of the peace in any county in this state, who is hereby authorized to hold a court within such county, to *hear, try and determine the same according to law,* * * * which court shall be a court of record, and vested, *for the purposes afore-*

*said, with all such power as is usual* in courts of record of this state." *Rev., p.* 539. In the act establishing District Courts, which are courts in certain cities of a jurisdiction co-ordinate with that of the courts for the trial of small causes, the legislative expression is "that said courts shall be courts of record and have official seals, and all persons shall be amenable to punishment for contempt of said courts in the same manner as in other courts of record of this state, having power to punish for contempt of court." *Rev., p.* 1301, § 3. By the general statutes concerning evidence and juries, witnesses and jurors refusing to obey the process of the court are made liable to punishment as for contempt of the court out of which the process issued. *Rev., p.* 379, § 13 ; *p.* 526, § 5. In the courts for the trial of small causes, the only penalty laid upon a defaulting juror or witness is a fine not exceeding $20, to be levied and collected by execution against the goods and chattels of the offender. *Rev., p.* 547, § 35.

It will be perceived that the court in question is created to hear, try and determine certain civil causes only, and that it is made a court of record, and vested, for that purpose only, with such powers as are *usual* in courts of record of this state. I think the language of the first section of the act, carefully guarded as it is, when taken in connection with the fact that the power to punish for contempt is withheld from this court in cases where it is given to other courts, indicates that it was not the legislative intent to confer on this court the extraordinary powers which, by the common law, are exercisable under the power to punish contempts. In *Rex* v. *Faulkner*, 2 *C., M. & R.* 525, it was held that a commissioner in bankruptcy, when sitting alone, had no power to fine or commit for contempt in delivering to him, when sitting in his court, a letter reflecting on his conduct, though he acted under the statute constituting the Court of Bankruptcy, which declared that the court should be a court of law and equity, and should, with any judge and commissioner thereof, have, use and exercise all the rights, incidents and privileges of a court of record, and all other rights, incidents and privileges, as fully to all

intents and purposes as the same are held, exercised and enjoyed by any of His Majesty's courts of law or judges at Westminster. In Ex parte Kerrigan, this court held that the recorder of a city, who, by statute, was authorized to try all causes for violations of city ordinances, with the jurisdiction of a justice of the peace in criminal matters, and power to fine and imprison, had no power to punish by a commitment a contempt in using insulting language to him while sitting in the trial of a complaint for violating a city ordinance.

Nor is the power to commit by way of execution as a punishment for the contempt, necessary for the maintenance of order in the court or the vindication of its authority. An indictment will lie for speaking scandalous words concerning a magistrate in the execution of his office, or for a contempt which, though not a breach of the peace, amounts to an obstruction in the execution of his office. *Rex* v. *Ravel*, 1 *Stra.* 420; *Rex* v. *Darby*, 3 *Mod.* 139; *Brooker* v. *Commonwealth*, 12 *Serg. & R.* 175; 2 *Bish. Cr. Law*, § 251. It is clear that all disorders in a court-room, and all attempts, forcible or fraudulent, to obstruct the due course of public justice, are in like manner indictable. *Whart. Cr. Pl. & Prac.*, § 955. For abusive and reproachful words spoken to a justice of the peace relative to his judicial conduct, the justice has power to cause the arrest of the offender, and require bail for his appearance to answer to an indictment and for good behavior until the next Sessions. *Richmond* v. *Dayton*, 10 *Johns.* 393; *Albright* v. *Lapp*, 26 *Penna. St.* 99. In *Spilsbury* v. *Micklethwaite*, 1 *Taunt.* 146, it was held that a sheriff presiding in a county court, held for the election of members of parliament, had power to order a freeholder, who interrupted the proceedings by disorderly conduct, to be taken into custody and carried before a justice of the peace to give security for good behavior. A justice of the peace or coroner, when in the exercise of his judicial functions, has the power to cause a bystander, whose conduct or presence in the court-room is prejudicial to the interests of justice, to be removed from the room; and such an order, if made in the exercise

of a sound judicial discretion, will be a justification in an action of trespass, and, if resisted, will subject the offender to indictment for resisting the officer in the discharge of his duty. *Garnett* v. *Ferrand*, 6 *B. & C.* 611; *State* v. *Copp*, 15 *N. H.* 212.

The power to remove persons who, by disorderly conduct, interfere with the business of the court, is a power essential to the very existence of the court, and is implied from the creation of the court. It belongs to all deliberative bodies, judicial and legislative, and is necessary to their self-preservation. Without such a power, it would be impossible to perform the functions for which such bodies are created. But the power to commit for contempt, is a power of inflicting a penal sentence for an offence, and the validity of the sentence will depend upon the jurisdiction of the court to pronounce it. Such a power is not a necessary incident of a court of justice, and therefore is not granted by implication. It can only be derived from the common law or by a legislative grant of such a power. The remarks made by Sir James Colvill in *Doyle* v. *Falconer*, *L. R.*, 1 *P. C.* 340, when discussing the powers of a colonial legislative assembly, are quite germane to this subject. See, also, *Maxwell on Statutes* 322.

In the present case, the justice might have caused the plaintiff to be removed from his court-room. He might have required of him bail for his appearance at court to answer to a criminal charge, and as security for good behavior. He might have committed the plaintiff into custody until the cause on trial was concluded, before he gave him a hearing; and if the plaintiff refused or was unable to give bail, he might have committed him to jail in default of bail.

These powers, which are inherent in the judicial office, in the exercise of official duties, are amply sufficient to secure order and decorum in these courts, and to vindicate their authority. Occasionally, they may not be efficacious to restrain disorderly persons from abusive and disorderly conduct; but it is better that these tribunals should occasionally be subjected to the annoyance of such conduct, than that the one thousand

and fifty-nine justices of the peace in commission in this state should be invested with the common law power to commit for contempt—a power which, at best, is an arbitrary power, and liable to great abuses.

The plea demurred to is bad, and the demurrer should be sustained.