12 N.J. Super. 61 (1950)
79 A.2d 59
ELSIE ZIMMERMAN, PLAINTIFF,
v.
JAMES ZIMMERMAN, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued August 21, 1950.
Decided October 2, 1950.
*64 Before Judges JACOBS, BIGELOW and WM. J. BRENNAN, JR.
Mr. James A. Major argued the cause for the State.
Mr. Warren Dixon, Jr., argued the cause for the appellant.
The opinion of the court was delivered by BIGELOW, J.A.D.
The appellant, an attorney an attorney and counsellor-at-law, was summarily convicted of a contempt which in substance amounted to subornation of perjury in a divorce suit. Concededly there was perjury; but did Elsie Zimmerman, the petitioner, herself concoct it, or did her solicitor, the appellant?
In August, 1948, appellant filed the petition for divorce, alleging desertion. The action, which was not contested, came on for hearing October 31, 1949, when Mrs. Zimmerman and a witness named Merrick testified. The following day, another witness, Thomas Rady, testified. An order of dismissal was entered November 4. The petition for divorce gave Mrs. Zimmerman's address as 40 Harding Road, in the Borough of Glen Rock, Bergen County. It alleged that she had been a bona fide resident of New Jersey when the cause of action arose and for more than two years next preceding the commencement of the action. She testified that she had lived at the Colgate place on Blue Mill Road, Morristown, until June, 1948, when she moved to Glen Rock. Merrick testified that he resided on Blue Mill Road at the time of the hearing and had lived there since 1941, except for two years when he was in military service; that Mrs. Zimmerman was his nearest neighbor when she lived there. Actually, Mrs. Zimmerman dwelt at Morristown only until 1943 when she moved to Long Island, where she has lived ever since. She never lived at Glen Rock. Merrick has never lived in New Jersey; he had been acquainted with Mrs. Zimmerman only since she moved *65 to Long Island. Such was the fraudulent attempt to bring Mrs. Zimmerman's suit within the jurisdiction of New Jersey.
In March, 1950, Mrs. Zimmerman, Merrick and Rady were accused of contempt of court consisting of perjury. The first two pleaded guilty, while Rady was tried and convicted. Mrs. Zimmerman then accused her solicitor, the appellant, of inventing the falsehoods which she and Merrick uttered, and the proceeding against appellant was thereupon instituted.
The contempt charge was tried before an advisory master, the same one who heard the divorce case, and thus is presented the first ground urged for reversal, namely, that the advisory master was without jurisdiction.
As Vice-Chancellor Berry pointed out in the Caruba case, 139 N.J. Eq. 404, at 421 (Ch. 1947); affirmed, 140 N.J. Eq. 563 (E. & A. 1947), a master, acting within the scope of the reference to him, is for all practical purpose the court itself. He added that the special master in the suit then under discussion, "could not, of course, have summarily committed the defendant for his confessed perjury, but only because such action was outside the reference which limited his power and there was no general reference under which he could act." There was, however, a general reference to advisory masters of applications to punish for contempt for disobedience of orders in matrimonial causes and to punish for criminal contempt. Chancery Rule 128(e). By virtue of this rule, which was first promulgated in 1933 and broadened in 1936, advisory masters heard criminal contempt charges which grew out of matrimonial causes and advised the Chancellor what order or decree should be made.
The Constitution adopted by the people in 1947, directed that the advisory masters who had been appointed to hear matrimonial proceedings, shall "continue so to do as Advisory Masters to the Chancery Division of the Superior Court, unless otherwise provided by law." Art. XI, § 4, par. 6. Following this constitutional provision, our present Rule 3:87-4 requires matrimonial actions to be heard by a judge of the Chancery Division or by an advisory master assigned thereto. Counsel for appellant points out that the *66 Constitution and the Rule direct only that the advisory masters hear matrimonial matters and are silent on the subject of contempt. Of course, a criminal contempt prosecution is separate from the cause in which the contempt is committed. The parties may be  and in the present instance are  different. A criminal contempt is a public wrong; it is a misdemeanor. Staley v. So. Jersey Realty Co., 83 N.J. Eq. 300 (Sup. Ct. 1914). It may be prosecuted on indictment like other crimes. In re Kerrigan, 33 N.J.L. 344 (Sup. Ct. 1869). When prosecuted in a summary manner in the court against which the contumacious conduct was directed, it was formerly considered that the matter must be entitled as a separate cause. Passaic Athenia Bus Co. v. Consolidated Bus Lines, 100 N.J. Eq. 185 (Ch. 1926); Dorrian v. Davis, 105 N.J. Eq. 147 (Ch. 1929). But the original cause and the criminal one are generally intertwined. Indeed, the contemptuous acts may be such that they may be dealt with either as a criminal or a civil contempt. Beatty v. Wunschel, 122 N.J. Eq. 286 (Ch. 1937). Our present rules provide that a contempt, whether criminal or civil, "shall be prosecuted in the action in which it occurs." Rule 3:80-2. In our opinion, the prosecution for contempt is a part of the matrimonial cause in which the contempt is committed, within the meaning of Art. XI, § 4, par. 6 of the Constitution and Rule 3:87-4, although in most other aspects the two are independent actions. The advisory master to whom is assigned a matrimonial cause, has the same jurisdiction and authority in contempt matters that advisory masters were accustomed to exercise prior to September 15, 1948, that is, he may conduct the trial and advise the order or judgment that ought to be made in a criminal contempt which occurs in the matrimonial action, except as prohibited by paragraphs (d) and (e) of Rule 3:80-2. And the order or judgment so advised becomes the order of the Superior Court when signed by a judge of the court. That was the procedure followed in the present instance.
It is next urged that there was error in the admission of evidence. Mrs. Zimmerman and Merrick each made a statement *67 under oath, or affidavit, in the county jail on March 15, 1950. The order to show cause which initiated the contempt proceeding was supported by these affidavits and a copy of them was served on appellant with the show cause order. When the contempt was tried, the Zimmerman woman and Merrick testified for the State. In the course of cross-examination, appellant's counsel asked the prosecutor for the original sworn statements, received the documents, and used them on the cross-examination. At the conclusion of the examination of these witnesses, the State offered the statements in evidence and they were received over the objection of appellant.
The State seeks to sustain the receipt of the statements on the ground that they were produced upon appellant's demand, and that in the course of the cross-examination parts of the statements were put before the court for the purpose of contradicting these witnesses.
It has been considered to be the rule that if a party call on his adversary for the production of a paper and examine it, he cannot object to its being put in evidence if it be in any way material to the issues. "The reason for this rule is that it would give an unconscionable advantage to a party to enable him to pry into the affairs of his adversary without, at the same time, subjecting him to the risk of making whatever he inspects evidence for both parties." Ellison v. Cruser, 40 N.J.L. 444 (Sup. Ct. 1878); Decker v. Smith, 88 N.J.L. 630 (E. & A. 1915). For cases from other states, see 151 A.L.R., Annotation, at 1006. For vigorous criticism of the rule, see Wigmore on Evidence, § 2125. The spirit of our new court rules relating to discovery seems to run counter to the old practice outlined in the cases we have cited, so much so that we would hesitate to say whether or not those cases state what is still the law. The affidavits or statements in question which were in question and answer form were, as we have mentioned, the foundation for the proceeding against the appellant. They were papers in the case in the same sense as are the affidavits which form the basis for an order for an interlocutory injunction. A copy had been served on appellant *68 at the outset. All he called for was the signed originals. He did not pry into the State's case. The rule on which counsel for the State first relies is not applicable.
It is also a rule of the law of evidence that when an oral or written statement of a witness is used on cross-examination for the purpose of contradicting the witness, and in this manner parts of the statement are put in evidence, then the remainder of the statement which concerns the same subject and which is explanatory of the part used in the cross-examination, becomes evidential. Wigmore  Evidence, § 2113. The rule which has been followed in New Jersey is probably broader than indicated above, so that all of the statement upon the same subject is admissible, whether or not it is explanatory of the part used in the cross-examination. State v. Cohen, 97 N.J.L. 5 (Sup. Ct. 1921). And when the statement is written, practical considerations generally permit the whole document to be put in. Iverson v. Prudential Ins. Co., 126 N.J.L. 280 (E. & A. 1940). The trial court necessarily has considerable leeway or discretion in a matter of this sort. In the present instance, appellant did not suggest that any particular parts of the statements were not properly admissible, but objected to the statements in toto. We find no error or impropriety in their admission.
We need hardly add that such statements or ex parte affidavits, are not evidential of any of the happenings mentioned therein. They could properly be used only to enable the court to determine whether taken as a whole they contradicted the testimony of the affiants, given in court in the proceeding against appellant, or otherwise weakened the credibility of such testimony. Affronti v. U.S., 145 F.2d 3 (1944).
The last reason for reversal presented by appellant is that the evidence does not warrant conviction. And this requires brief consideration of the nature and scope of the appeal.
A conviction of criminal contempt is not reviewable by an appellate tribunal in the absence of statute, except for lack of jurisdiction. Seastream v. N.J. Exhibition Co., 72 N.J. Eq. 377 (E. & A. 1907). The Legislature in 1884 *69 passed an enactment, later embodied in R.S. 2:15-3 to 6, giving an appeal to a person found guilty of contempt by a law court inferior to the Supreme Court. Section 2:15-3 declared that the conviction should be reviewable "both upon the law and the facts," while section 2:15-5 required that "the facts shall be inquired into and ascertained" upon the appeal "by depositions or otherwise as the court shall direct, and the court shall give such judgment in the premises as it shall deem to be lawful and just under all the circumstances of the case, which judgment shall be enforced as the court shall order." Two years ago the Legislature revised the statute, made it applicable to a summary conviction by the Law or Chancery Division, a County Court or any inferior court. The direction that the facts should be ascertained "by depositions or otherwise as the court shall direct," was deleted but the other provisions quoted above were retained unchanged. P.L. 1948, c. 333, §§ 1 and 2. The appeal under the 1884 statute was a trial de novo upon evidence presented in the higher court. Attorney General v. Verdon, 90 N.J.L. 494 (E. & A. 1917). Under the present statute, we think the review is still a trial de novo, but the omission of the requirement for an inquiry "by depositions or otherwise," indicates a legislative intention that the facts shall be determined by a review of the evidence already taken, at least where the accused had a full opportunity to present his side of the case, and a stenographic transcript is available. Our function is not merely to affirm or to reverse and remand for a new trial, but to find the appellant guilty or not guilty, and if we find him guilty, to impose such punishment as the law permits and seems to us just. This extraordinary review is given doubtless because in the court of first instance the same judicial officer directs the contempt proceeding to be initiated, appoints the prosecutor, tries the facts, imposes the penalty and may also be unconsciously influenced by the circumstance that he presides over the court against which the alleged contempt was aimed.
We start with the presumption that appellant is innocent, and we must acquit him unless a carefuly study of the evidence produces in our minds "an abiding conviction to a *70 moral certainty of the truth of the charge." In re United Hatters, 110 N.J. Eq. 42 (E. & A. 1931); State v. Linker, 94 N.J.L. 411 (E. & A. 1920).
Each of the witnesses for the State had either pleaded guilty or been convicted of a contempt which was in substance willful perjury. While they were not thereby disqualified from testifying against appellant (State v. Wendel, 96 N.J.L. 495 (E. & A. 1921)), the weight to be given their testimony was seriously impaired. Put against that the obvious interest that appellant had in denying the charge.
When Mrs. Zimmerman, in August, 1948, first called on appellant at his law office, she had no previous acquaintance with him and was not introduced by a third person. She consulted a New Jersey attorney because she was aware that adultery was the only basis for a divorce in New York, while in New Jersey a divorce could be obtained for desertion. She knew that in order to get a divorce, the law required her to be a resident of the state in which she sued. Yet the first time she called upon appellant, she says she frankly told him that she lived in Bellerose, Long Island, and "He said you have to be a resident, but he would take care of it. * * * He'd give me an address." So he drew the petition for divorce and inserted in it the statement that she resided at 40 Harding Road in the Borough of Glen Rock and County of Bergen. She testified that he "gave me Glen Rock. I don't know where Glen Rock is to this day."
Merrick had been acquainted with Mrs. Zimmerman four or five years, and had called on her at her home on Long Island. She asked him to testify in her behalf. "I didn't have any more idea of what I was going to testify to except that I was going to be a witness. * * * All I knew was Mrs. Zimmerman had required witnesses." So she took him to appellant's office where appellant gave him his instructions. But Merrick's testimony is so incoherent, and the passages in his testimony which inculpate appellant are so at variance with the sworn statement made by him in jail, that very little weight, if any, can be given to his evidence.
*71 Although Rady was a witness for the State, his testimony supported the defense. At least it shows that appellant did not teach him what his evidence in the divorce case should be.
Appellant testified in full denial of the charge. On the record before us, he had a very good reputation before the present accusation was brought against him. He has been a member of the bar since 1918, and has served as recorder and as city attorney of the municipality in which he has resided all his life. What was his interest in the matter that such a man should concoct perjury and jeopardize everything that he must hold dear? He was paid a retainer of $100 at the outset, another $100 just before the hearing, and expected a final $150 at the completion of the divorce case. The money seems an inadequate motive. But assuming for the moment that appellant procured the perjured testimony, he must have anticipated, after his years at the bar and extensive practice in divorce matters, that there would be some questioning of Mrs. Zimmerman and Merrick by the court. Yet he gave them no preparation for even the simplest questions. And it taxes our credulity to believe that appellant, the first time he saw Mrs. Zimmerman, when he knew nothing of her, told her unreservedly that he would participate actively in her fraudulent design. "He'd give me an address." If appellant is a knave, he is still more a fool.
We realize the weaknesses in appellant's case, such as the odd fact that during the 15-months' period Mrs. Zimmerman's case was pending, he never communicated with her by mail; the curious tone of the letter he wrote her immediately after the hearing; the puzzle of the color of the ink with which she signed sundry papers. Yet, after a full consideration of these circumstances and of the entire case, we do not find that the evidence establishes the guilt of appellant. We will enter judgment of acquittal. No costs.