10 N.J. Super. 475 (1950)
77 A.2d 483
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CLARENCE ILLARIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1950.
Decided December 6, 1950.
Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Myron L. Levy argued the cause for the appellant.
Mr. Charles A. Reid, Jr., argued the cause for the respondent.
*476 The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from an order entered by the Magistrate of the Municipal Court of the Township of Bridgewater adjudging the defendant guilty of contempt of court.
On April 9, 1950, words passed between the defendant Clarence Illario and his neighbors, the Blackfords. A complaint was filed by the Blackfords charging the defendant with using vile, profane and insulting language in violation of an ordinance of the Township of Bridgewater which declared such action to be disorderly conduct. At the hearing the Blackfords testified that the defendant had used the improper language and they were supported by Kathryn Brennan who lived next door. On the other hand, the defendant testified that he had not used any vile, profane and insulting language and he was supported by his wife Helen. At the close of the testimony on defendant's behalf the magistrate, on his own motion, called for testimony by Mrs. Brennan, clerk of his court and mother of Kathryn Brennan; she corroborated her daughter. The magistrate found the defendant guilty of disorderly conduct and assessed a fine and costs which were paid. Thereafter, the magistrate issued an order directing the defendant to show cause why he should not be adjudged guilty of contempt of court for having falsely testified when, in the course of his defense on the disorderly conduct charge, he denied he had used the improper language. Hearing was held, the Blackfords and Brennans again testified that the defendant had used the improper language, the defendant and his wife Helen again testified to the contrary, and the magistrate again disbelieved the defendant's denial. This time he adjudged the defendant guilty of contempt and the present appeal is from this action.
The problem as to when the giving of false testimony in a judicial proceeding constitutes contempt has given courts much concern. As Justice Black said in Matter of Michael, 326 U.S. 224, 227, 90 L.Ed. 30, 33 (1945), it is clear that "all perjured relevant testimony is at war with justice, since it *477 may produce a judgment not resting on truth" and as a crime it is indictable and triable by jury with constitutional and traditional safeguards. However, when dealt with as contempt it becomes subject to the awesome power of the court to deal with it in its discretion, summarily and without fixed limit of punishment  a power described by Justice Depue as, at best, "an arbitrary power, and liable to great abuses." Rhinehart v. Lance, 43 N.J.L. 311, 321 (Sup. Ct. 1881).
In the light of the foregoing the Supreme Judicial Court of Maine in Ex parte Holbrook, 133 Me. 276, 177 A. 418 (1935), denied to itself power to deal with the giving of perjured testimony as contempt, declaring that while perjury is an abhorrent crime it would be "unsafe and unwarranted" to deal with it in any manner other than as a crime triable by jury. See State v. Lazarus, 37 La. Ann. 314 (1885). Similarly, the United States Supreme Court has declined to sanction contempt proceedings based solely on the giving of false testimony. See Ex Parte Hudgings, 249 U.S. 378, 63 L.Ed. 656 (1919); Clark v. United States, 289 U.S. 1, 11, 77 L.Ed. 993, 998 (1933); Matter of Michael, supra. In the Clark case Justice Cardozo expressed the Supreme Court's doctrine in the following language:
"Perjury by a witness has been thought to be not enough where the obstruction to judicial power is only that inherent in the wrong of testifying falsely. * * * For offenses of that order the remedy by indictment is appropriate and adequate. On the other hand, obstruction to judicial power will not lose the quality of contempt though one of its aggravations be the commission of perjury."
Recent applications of this doctrine may be found in United States v. Goldstein, 158 F.2d 916 (7th Cir. 1947), and Howard v. United States, 182 F.2d 908 (8th Cir. 1950).
In several states, courts have taken the position that although the power to treat the giving of false testimony as contempt exists it will not be exercised unless the court has "judicial notice of the falsity," e.g., where it is admitted by the contemnor or otherwise appears incontrovertibly. See People v. Harrison, 403 Ill. 320, 86 N.E.2d 208 (1949); *478 Hegelaw v. State, 24 Ohio App. 103, 155 N.E. 620 (1927); McInnis v. State, 32 So.2d 444 (Miss. Sup. Ct. Div. A 1947). In the Hegelaw case the court said:
"In nearly every case issues of fact are made up by the pleadings, each side seeking by testimony to maintain its side. The court or jury, in rendering judgment or verdict, bases its finding upon the testimony which seems the more probable. Merely because the court chose to believe the one side in preference to the other as to an issue of fact, upon grounds of greater probability, would not justify the court in holding the witness who supported the losing side guilty of contempt of court. To justify such action by the court the falsity of the witness' testimony, given in open court, must be a matter of judicial knowledge, not merely of opinion. In other words, it must be a patent falsehood upon which there can be no difference of opinion. If the alleged false statement is merely a matter of the court's opinion, as distinguished from its knowledge, contempt proceedings will not lie."
In this connection the notion which once prevailed in King's Bench that the denial under oath by the alleged contemnor, although indictable if false, constituted a bar to further prosecution of the contempt is worthy of mention. See Curtis, "The Story of a Notion in the Law of Criminal Contempt, 41 Harv. L. Rev. 51 (1927). Although the notion had ceased to be a defense in England by 1796 and had been discarded by the United States Supreme Court in United States v. Shipp, 203 U.S. 563, 51 L.Ed. 319 (1906), it was apparently accepted by our former Supreme Court in In re Gonzales, 88 N.J.L. 536, 544 (Sup. Ct. 1910). However, the notion never prevailed in our Court of Chancery and we may safely state that it does not, in its comprehensive form, represent our present law. Cf. Attorney General v. Verdon, 90 N.J.L. 494 (E. & A. 1917); In re Merrill, 88 N.J. Eq. 261, 282 (Prerog. 1917); In re Baer, 13 N.J. Misc. 148, 151 (Sup. Ct. 1935).
In New Jersey the giving of false testimony has been generally considered to constitute a contempt of court punishable as such. Thus, in In re Caruba, 139 N.J. Eq. 404 (Ch. 1947); affirmed, 140 N.J. Eq. 563 (E. & A. 1947); cert. denied, 335 U.S. 846, 93 L.Ed. 396 (1948), the Court of Chancery adjudged a witness who had testified falsely guilty *479 of contempt and cited prior New Jersey decisions to support the view that perjury or false swearing is a "contempt of court and may be punished, notwithstanding an indictment for perjury as a crime will also lie." In the Caruba case the contemnor had admitted the falsity of his testimony and in all of the cited cases, with the possible exception of Edwards v. Edwards, 87 N.J. Eq. 546 (Ch. 1917), the falsity of the testimony likewise appeared incontrovertibly. In the Edwards case Vice-Chancellor Lane found that the husband petitioner in a divorce proceeding testified falsely and engaged in other misconduct, adjudged him guilty of contempt, and said:
"The power to punish for contempt is an arbitrary power, and should be used only when absolutely necessary in the interest of justice, and then with great care and discretion. Courts will not ordinarily, when the facts are in dispute, punish perjury as a contempt, not because of lack of power, but because sound public policy requires that the offender should be left to the criminal law. But where the facts are admitted or demonstrated, it seems to me that the court would be shirking a clear duty if it did not act. And circumstances may arise which would make it the duty of the court to act even if it was obliged to weigh evidence. Perjury committed by a petitioner which has induced the court to grant a decree of divorce presents one of this class of cases."
See Zimmerman v. Zimmerman, 11 N.J. Super. ___ (App. Div. 1950); Swanson v. Swanson, 10 N.J. Super. 513 (App. Div. 1950).
Unlike the petitioner in the Edwards case who voluntarily sought affirmative relief from the court and then imposed upon it, the case before us deals with a defendant in a proceeding essentially criminal in nature. State v. Yaccarino, 3 N.J. 291, 295 (1949). As such defendant he testified and conducted himself in respectful fashion and his denial of the offense could be true although the court as trier of the facts disbelieved him and his wife and determined that the witnesses in support of the charge against him were telling the truth. Finkel v. McCook, 247 App. Div. 57, 286 N.Y. Supp. 755, 761 (1936); affirmed, 271 N.Y. 636, 3 N.E.2d 460 (1936). In none of the cases which have been brought to our attention has conviction for an alleged contempt by a defendant under *480 comparable circumstances been sustained. Cf. People v. Tomlinson, 296 Ill. App. 609, 16 N.E.2d 940 (1938), where the Appellate Court of Illinois reversed a contempt conviction in the municipal court of a defendant charged with a motor vehicle violation whose testimony was found by the magistrate to be false on the basis of testimony to the contrary.
We assume that municipal courts established pursuant to P.L. 1948, c. 264, are vested with adequate power to punish contempt committed in open court. See Rule 8:9. But cf. In re Kerrigan, 33 N.J.L. 344 (Sup. Ct. 1869); Rhinehart v. Lance, supra. Nevertheless, under P.L. 1948, c. 333, a person convicted of such contempt in a municipal court is entitled to a trial de novo in the Appellate Division which is expressly empowered to "give such judgment as it shall deem to be lawful and just under all the circumstances of the case." Zimmerman v. Zimmerman, supra. Our de novo examination of the record in the instant matter has led us to the conclusion that judgment of acquittal of contempt would be the lawful and just one under all the circumstances of the case. When the defendant was charged with disorderly conduct he defended in orderly fashion as was his natural and lawful right. He was duly tried, convicted of the ordinance violation, and sentenced, when the magistrate disbelieved him and his witness on the basis of the testimony to the contrary. Under similar circumstances our courts have ordinarily permitted the proceeding to terminate without the suggestion of contempt. We have not been advised of any reasons for departure in the instant matter and no unusual circumstance has been presented other than that the court clerk had been called by the magistrate as a witness to contradict the defendant's denial. It seems to us, however, that this circumstance might well have been considered as special cause for permitting the defendant's perjury, if any, to be dealt with in regular course by other authorities rather than by contempt proceedings before the magistrate. It must be borne in mind that, in the effectual maintenance of a strong and independent court system, the appearance as well as the actuality of fair *481 and impartial judicial administration must at all times be sought. While there undoubtedly was sufficient proof, as a matter of weight of evidence, to justify the magistrate in his belief that the defendant had committed perjury, the record before us nonetheless indicates that the defendant has, with his wife's corroboration, consistently and steadfastly maintained his denial of the ordinance violation, and perhaps it was not untruthful. We cannot bring ourselves to the belief that upon such directly controverted showing the contempt conviction of this defendant, unaccompanied by the constitutional and traditional safeguards which would surround his trial by jury for the crime of perjury or false swearing, would be lawful and just or that it would not, in its implications, serve to retard rather than advance the proper administration of justice according to law. Cf. Pound, "Justice According to Law," 13 Col. L. Rev. 696, 709 (1913).
Judgment of acquittal of contempt will be entered, without costs.