## IN THE MATTER OF THE CRIMINAL CONTEMPT CHARGED AGAINST CHARLES J. MOLNAR.

Superior Court of New Jersey
Appellate Division

Argued November 23, 1964—Decided December 9, 1964.

Before Judges GAULKIN, FOLEY and COLLESTER.

*Mr. John E. Toolan* argued the cause for appellant (*Messrs. Toolan, Haney & Romond,* attorneys).

*Mr. Douglas T. Hague* argued the cause for respondent (*Mr. Harold G. Smith,* attorney).

The opinion of the court was delivered by

FOLEY, J. A. D. This is an appeal from a summary conviction of criminal contempt entered in the Law Division against Charles J. Molnar, David T. Miller, Sr., John P. Hughes, David Nicola, Jr., Maynard B. Winston and John Evanko, Jr., all of whom formerly were members of the Township Committee of Woodbridge. Only Molnar perfected the appeal, the other five having abandoned the proceeding.

The six named individuals constituted the Republican Party majority of the 11-man township committee. The other four committeemen and the mayor (also a committeeman) were members of the Democratic Party. As the result of a general election held in November 1961 the majority of the newly elected township committee which was to take office on January 1, 1962 were members of the Democratic Party.

On December 9, 1961, pursuant to *N. J. S. A.* 33:1–12.14 and in accordance with the 1960 census, the township committee adopted an ordinance which authorized the township to issue four additional plenary retail distribution liquor licenses. Five Republican Party members of the committee voted in favor of its adoption, three Democratic members voted against it. Molnar, a holder of a liquor license in Woodbridge, abstained from voting. Immediately thereafter an action in lieu of prerogative writs was brought against the mayor, the township committee and the township clerk. It was alleged that the ordinance was adopted in bad faith, without regard to the public convenience or need, and was a last minute effort to dispense party patronage before the Democrats would assume control of the township committee on January 1, 1962. Plaintiffs sought a judgment declaring the ordinance void and restraining the township committee from issuing licenses thereunder.

Five of the plaintiffs, in a separate count of the complaint, alleged that some were in the process of perfecting applications for the issuance to them of new licenses at the time the ordinance was adopted, and others intended to initiate such applications. They charged that the township committee intended to hold a hearing on December 26, 1961 to consider the issuance of licenses to four other applicants who had already perfected their applications. These plaintiffs did not attack the validity of the ordinance but sought a judgment enjoining the issuance of new licenses until their respective applications could be investigated and considered.

A verified complaint in the in lieu action was presented to Superior Court Judge Waesche on December 26, 1961, who issued an *ex parte* order returnable December 29, 1961, requiring defendant township committee to show cause why the relief sought in the complaint should not be granted. The order contained a provision for an interim restraint from holding a public meeting on December 26, 1961, from holding any public meeting until such time as the late filing applicants might properly be considered and investigated, and from

issuing any licenses pursuant to the ordinance until this could be done. When the order to show cause was served, the township committee meeting scheduled for December 26, 1961 was adjourned.

On December 29, 1961 the attorneys for the parties appeared before Judge Waesche on the return of the order to show cause. Briefs were submitted and arguments were heard. The township took the position that irreparable damage would not be suffered by plaintiffs if the restraint was dissolved, and further, that the restraint from holding a meeting for any purpose would prevent the township from transacting necessary business which was unrelated to the issuance of liquor licenses. At the conclusion of the arguments the judge, in open court, announced his intention of continuing the interim restraint. However, he termed it too broad and modified it to apply only to the hearing of applications for liquor licenses, thus permitting the township committee to transact other business. For reasons which are unimportant here, the attorneys were unable to agree on the form of an order continuing and modifying the restraint in accordance with the court's oral deliverance.

On the evening of December 29, 1961 the meeting adjourned from December 26 was held. It was attended by the six Republican committeemen above named and by four Democratic committeemen. Committeeman Evanko presided. Prior to the transaction of any business the township attorney made known to the assembled group Judge Waesche's oral determination and order. He stated that he did not know whether the order, being oral, had binding effect on the committee or whether its violation would amount to a contempt of court. He said, also, that the violation of an oral order might be deemed to be contempt, and suggested to the committee that it should decide in its "own best judgment" whether it should issue liquor licenses that night. At the instance of Evanko, the township clerk then commenced the reading of the resolutions granting the four liquor licenses. At this point the four Democratic members of the committee arose and left the

meeting room with the statement that they did not wish to be parties to a meeting which might possibly be illegal or in contempt of court.

By separate resolutions the four applications for licenses were granted upon the vote of five of the remaining committeemen. In each instance Molnar abstained from voting. At this juncture it should be noted that the quorum necessary to township committee action required that there be present at the meeting a majority of the committee, and that with Molnar's continued presence, even though he abstained from voting, there was a quorum present..

After the resolutions had been adopted the four Democratic members of the committee returned to the meeting and numerous items of business were transacted in which Molnar participated. These included such matters as passing upon zoning variances, the transfer of excess appropriations, the transfer of a township bank account, a resolution authorizing payment for construction of a sanitary sewer, another for the payment of a real estate commission, the awarding of a bid for storm drainage work, and a resolution approving vouchers for and covering payment of township obligations.

Thereafter plaintiffs supplemented their complaint in the in lieu action to reflect the granting of the four liquor licenses and joined the new licensees as defendants.

On January 15, 1962 Judge Waesche issued restraints enjoining the new licensees from exercising any rights or privileges under the licenses.

On January 17, 1962 the judge issued an order directing the six Republican members of the committee to show cause why they should not be adjudged guilty of criminal contempt "for their failure to obey the injunctive order served upon them," and directing the attorneys for plaintiffs in the in lieu action to prosecute the contempt proceedings. On February 9, 1962, by consent of counsel, the criminal contempt proceeding was postponed pending final adjudication of the in lieu action.

Following the denial of a motion for summary judgment made by defendants, a plenary trial of the in lieu action was

had before Judge Cohen in the Law Division, Middlesex County. The court held the ordinance of December 19, 1961 and the four licenses issued thereunder to be invalid. His determination was affirmed by this court. See *Ziegenbalg v. Mayor, etc., of Woodbridge Tp.*, 77 *N. J. Super.* 417 (*App. Div.* 1962), certification denied *Ziegenbalg v. Lavin*, 39 *N. J.* 238 (1963).

Thereupon the contempt proceedings were brought on for hearing before Judge Halpern in the Law Division. It was stipulated that the record in the in lieu action would be made a part of the record in the contempt proceeding. Both sides rested without offering additional evidence.

The trial court found the defendants guilty of criminal contempt, and quoting from the Appellate Division opinion, 77 *N. J. Super.*, at *p.* 422, said:

"The significant fact remains that the municipal defendants, as well as the individual defendants who were present at the township committee meeting on the evening of December 29, heard the statement read by the township attorney and so had full knowledge that the trial judge had forbidden any action's being taken on the issuance of the four licenses. Despite this, the Republican majority of six committeemen proceeded to adopt resolutions granting the licenses after the Democratic minority of four committeemen had left the room at the conclusion of the township attorney's statement."

The fact is, as we have already noted, Molnar, one of the "Republican majority of six committeemen," did not join the other five in granting the issuance of the four licenses.

Following this adjudication Molnar petitioned to the trial judge for a rehearing and for an order vacating and setting aside his conviction. In his petition he pointed out that he had not voted, and had not participated in any way in the discussion relating to the adoption of the ordinance. The trial court in denying the application held:

"I considered the position of this defendant because he was one who did not vote in favor of granting the licenses, but I also from the facts in this record came to the inescapable conclusion that he knew at the time that the matter was brought up for consideration by the Council, as revealed in this record, that if he did not partici-

pate as one of the six there would be no quorum to act upon the applications for licenses; and that even though he never voted from the time he was a councilman or committeeman for or against anybody applying for a license, and even though he never voted for the original consideration of this problem, he, in my opinion, and from my findings of the record, with malice aforethought stayed so that the other five could do what was ultimately done. Because as the others got up to go out and said they were not going to hold any meeting, or words to that effect, he nevertheless stayed. * * * And they knew, at least in my opinion, that it took six to make a quorum, and he stayed for the purpose of having that quorum. And this is why when I heard this matter the original return day, which I think was on April 18, and I am expanding on what I felt at that time, from the record, that he knew that his presence there would enable them to do something in violation of the Court's order.

\* \* \* \* \* \* \* \*

I am convinced beyond a reasonable doubt from this record, and that is all I have to go on, and the inferences that I draw from it, that he knew exactly what he was doing when he stayed, even though he ultimately did not vote."

 A summary conviction and judgment by the Law Division for a contempt is reviewable upon both the law and the facts by this court. The court is required to give such judgment as shall be deemed to be lawful and just under all the circumstances of the case. See *N. J. S.* 2A:10–3. *Bd. of Health, Weehawken Tp. v. N. Y. Central R. Co.*, 10 *N. J.* 284, 292 (1952). The contempt process is acknowledged to be harsh because of its summary nature and the many roles the court plays in the proceeding. The power should be used sparingly. *N. J. Dept. of Health v. Roselle*, 34 *N. J.* 331, 342–343 (1961). The contempt, being criminal in nature, requires proof of guilt beyond a reasonable doubt. *Van Sweringen v. Van Sweringen*, 34 *N. J. Super.* 394, 403 (*App. Div.* 1955), reversed on other grounds 22 *N. J.* 440 (1956).

 It was pointed out in the *Roselle* case:

"The contempt, *i. e.*, the public wrong, consists of a defiance of governmental authority. In the case of injunctive orders, it is more than the doing of the forbidden act or the failure to do what is ordered. The act or omission must be accompanied by a *mens rea*, a willfulness, an indifference to the court's command. The breach, if accompanied by that state of mind, challenges the authority of government whether the order be mandatory or prohibitory." 34 *N. J.*, at *p.* 337.

Although the appeals of Molnar's five codefendants are not before us, we have no hesitancy in saying that their acts in passing the four resolutions, after they had been advised of the court's order to refrain from doing so, clearly evidenced a willfulness and an indifference to the court's command justifying their conviction of contempt. Furthermore, we would agree with the trial court in Molnar's case if there had been evidence to sustain the trial court's finding that Molnar's continued presence at the meeting was to enable his colleagues to pass the resolutions in defiance of the court's order. We find no such evidence. There was no proof of any such agreement, or that he stayed with that intent. The trial court's conclusion that he remained for that purpose was purely speculative and thus insufficient to establish Molnar's guilt beyond a reasonable doubt.

It is not disputed that Molnar, to avoid what he considered to be a conflict of interest, had never previously during his term as a committeeman participated in committee business involving the granting of liquor licenses. Furthermore, the record discloses that when the Democratic members of the committee left the meeting room Molnar inquired of the township attorney whether his presence at the meeting place would, or could, be regarded as contempt if he did not participate in any discussion or vote relating to the issuance of licenses. He testified:

"I was about to leave and I asked Mr. Hutt if the oral order which he read permitted us to have a meeting. I was under the assumption at first that we weren't permitted to have a public meeting and I was about to leave. And since at the time I was Chairman of Public Works there were other resolutions and ordinances, I think, that were coming up at that meeting which I felt I had to be there.
Q. So Mr. Hutt informed you that you could hold—
A. It was permissible to have a meeting.
Q. And that was under the oral order?
A. I think it was, yes."

Lastly, Molnar had no way of knowing whether his Democratic colleagues intended to return to the meeting after the

liquor licenses had been acted upon. If they did not return, and he had left also, the remaining committeemen, five in number, would have been one fewer than the required quorum, and none of the substantial business of the meeting, some of which required action prior to January 1, could have been transacted. *Cf. Cullum v. Bd. of Education of Tp. of North Bergen,* 15 *N. J.* 285, 292 (1954).

Upon the entire record we conclude that Molnar's guilt of criminal contempt was not proved beyond a reasonable doubt.

Accordingly, the conviction of Molnar is reversed.