141 N.J. Super. 42 (1976)
357 A.2d 273
IN THE MATTER OF PATRICIA DE CARLO, CHARGED WITH CONTEMPT OF COURT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1976.
Decided March 24, 1976.
*43 Before Judges CARTON, CRAHAY and HANDLER.
Mr. Wayne Bryant and defendant, pro se, argued the cause for appellant (Messrs. Freeman, Zeller & Bryant, attorneys).
Mr. Michael R. Ascher, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant, an attorney, was adjudged in contempt of court, R. 1:10-1, for her alleged failure to conform her courtroom attire to a ruling which the trial judge had purportedly issued to her two days earlier. She contends that (1) it was not proven beyond a reasonable doubt that she acted willfully and deliberately to violate the court's order; (2) her conduct, as a matter of law, fails to qualify as a contempt of court; (3) the finding of contempt is procedurally defective because she was not given an opportunity to be heard before the contempt adjudication, and (4) a contempt order amounts to unconstitutional discrimination against female attorneys. We review the matter de novo. R. 2:10-4.
On January 28, 1975 defendant appeared in court on behalf of the Camden Area Legal Services. She was a member of the Pennsylvania Bar appearing here pursuant to R. 1:21-3(d). Unfortunately, a discussion which took place on that day between the judge and defendant was held "off the record" at the judge's direction. State v. Green, 129 N.J. Super. 157, 166 (App. Div. 1974). It concerned defendant's attire and what we know about it is derived only from the record of defendant's subsequent appearance on January 30 and from the challenged contempt order.
*44 The record of the January 30 appearance indicates that defendant recalled her January 28 attire as follows: "A pair of wool gray slacks, a matching gray sweater, and a green shirt." That record also reflects that the judge recalled that she was wearing a sweater and an open-collared blouse. The contempt order states that on January 28 she was wearing slacks.
The contempt order also states that on January 28 the judge "advised her that she was not properly attired for this courtroom." He told her that she should "not return to this Court to try any matter as an attorney unless dressed in customary courtroom attire."
On January 30, 1975 defendant appeared in the same court wearing slacks, a sweater and an open-collared blouse. She apparently spoke with the judge in his chambers although the conversation was also "off the record." Out of her presence the judge later placed his own statement on the record to the effect that during the in-chambers conversation he had told her "what my objections were as to her attire". There was no further specifications. At any rate, defendant then appeared in open court and the remainder of her exchange with the judge was recorded.
The judge reminded defendant that, two days earlier, he had objected to her attire. Specifically, he had objected to an open-collared blouse and a sweater. He said, though, that he did not really expect a woman to refrain from wearing open-collared blouses because he knew that it was not customary for them to wear neckties. Moreover, he did not object to slacks and did not care whether they matched "the jacket" or not. He would permit defendant to wear a dress in his courtroom, even if it was "loud," because he was "not fussy about the color." Thus, the use of a sweater was deemed the offensive article of clothing.
Defendant asked if she could be permitted to say something, to which the judge replied: "Let me finish, then you can say something." He noted that men were required to wear a jacket, slacks, shirt and necktie in his court. He felt *45 it only fair that a woman should also be required "to comply with any rules and regulations or code of dress." He said that defendant "should well realize what is proper before a Court," and he offered to continue defendant's cases "until you come in dressed in accordance with my guidelines."
He then immediately stated that defendant had "deliberately defied me" because two days before he had "objected to any form of sweater in the Court." He held that she was in contempt of court and imposed a $50 fine as the sanction.
Only then was defendant permitted to speak and she placed upon the record her recollection of her attire on the previous occasion. She remembered that the judge had "started off by saying that I should button up my collar, then saying something about not permitting sweaters, and then I should not  I was not properly attired." She noted that she had, on January 30, asked the judge for written guidelines as to proper attire in court for women attorneys. She considered her attire on January 30 "to be respectful and proper."
The judge refused to issue written guidelines on the ground that it was unnecessary and wasteful of his time. He said that defendant "should use sound judgment * * * as to what is nice and right in the Court. I would not expect a man to come in like that. Now, why should you be any different?"
Under R. 2:10-4 we must determine anew whether it has been proven beyond a reasonable doubt that defendant is guilty of contempt. In re Molnar, 85 N.J. Super. 543, 549 (App. Div. 1964); Zimmerman v. Zimmerman, 12 N.J. Super. 61, 69-70 (App. Div. 1951). We are not satisfied that such was the case and reverse.
The gist of the January 28 order was apparently that defendant must wear "customary courtroom attire." We cannot otherwise determine precisely what the contents of that order were. It is true that the judge, on January 30, said *46 that he had forbidden the use of any type of sweater in his courtroom. But he had apparently also said, on that earlier occasion, that he did not approve the use of an open-collared blouse. On January 30, however, he readily acknowledged that such a blouse did not violate the earlier order. We simply have no way of knowing whether he made it as clear on January 28 as he did on January 30 that a sweater would be totally unacceptable.
We hold, as a matter of law and fact, that the conduct shown by the present record does not constitute a contempt of court. The situation here is somewhat analogous to that in Peck v. Stone, 32 A.D.2d 506, 304 N.Y.S.2d 881 (App. Div. 1969). There a young female attorney appeared in a New York trial court wearing a dress "the hemline of which was approximately five inches above the knee." There, as here, there was no allegation that her appearance created any kind of disturbance in the courtroom or that it was so immodest "as to shock one's sense or propriety." That attorney, like this defendant, "was at all times respectful reserved, and at no time could her demonstrated attitude in any manner be considered contrary to her ethical responsibilities as an officer of the court." 304 N.Y.S.2d 883.
The trial judge in Peck v. Stone ordered the attorney not to appear in his courtroom again unless she wore clothing which was "suitable, conventional and appropriate." In Peck contempt was not found.
The New York Appellate Division noted that although a judge had power to enforce orders in his courtroom and an attorney had an obligation to cooperate, any order governing the conduct of an attorney must be reasonable and plausible. This particular order, the court held, "gives no indication as to what mode or type of dress would meet the requirement of `suitable, conventional and appropriate.'" The court continued:
* * * while we do not suggest that every matter or condition which is the subject of the discretion of the judge must be controlled by *47 specific standards, any such directive or order should be defined in such a fashion that it may be clearly understood to the end that compliance therewith may not be thwarted because of inexactitude or misunderstanding. [304 N.Y.S.2d 884-885.]
Although the State argues in this appeal that defendant must have understood that she could not wear a sweater to court, it must have been just as clear to the attorney in Peck v. Stone that the judge did not consider a dress with a hemline "five inches above the knee" to fall within his idea of courtroom attire which was "suitable, conventional and appropriate." Just as the New York trial judge's order was too imprecise to be upheld, the order here that defendant wear "appropriate courtroom attire" was too vague to be the basis of a contempt conviction. New Jersey Dept. of Health v. Roselle, 34 N.J. 331, 351 (1961).
We hold that Sandstrom v. State, 309 So.2d 17 (Fla. App. Ct. 1975), cited by the State, is inapposite. There a male attorney, appearing without a necktie, was told by a judge that he must wear one before appearing again. He immediately responded: "No sir. I am saying right now I shall not. I shall dress my mode of dress, not the dictations of the Court." The Florida court noted that he had thereby "taken the judge on" by obstinately refusing to obey his order. The court also noted that the wearing of a necktie in court had long been accepted as proper courtroom attire for men. We know of no such standards or traditions for female attorneys. Styles change and the promulgation of limits in dress is beyond precise articulation. Appellant was attired at oral argument in the clothes she wore in the trial court on January 28. In our view, they were not of the kind that could be fairly labeled disruptive, distractive or depreciative of the solemnity of the judicial process so as to foreclose her courtroom appearance.
Although we need not determine this issue for purposes of this appeal, we note that, before a judge makes a contempt determination, the accused should be permitted to *48 speak. In re Logan, Jr., 52 N.J. 475, 477 (1968). "The pronouncement of guilt before according that opportunity places the defendant at the disadvantage of trying to persuade a mind apparently already made up, and also puts the judge in the possibly embarrassing position of reversing himself if such persuasion results." State v. Zoppi, 72 N.J. Super. 432, 436 (App. Div. 1962). This defendant was given no opportunity to express herself on the contempt accusation until after the adjudication had been completed.
In view of our disposition, we see no need to address the asserted constitutional issues.
Reversed.